**UNITED STATES of America, and Gordon D. Meyer, Petitioners,**

v.

**PARTICLE DATA, INC. and Particle Data Laboratories, Ltd., Respondents.**

No. 85 C 10428.

United States District Court, N.D. Illinois, E.D.

May 2, 1986.

---

Anton R. Valukas, U.S. Atty., Eileen Marutzky, Asst. U.S. Atty., Chicago, Ill., Gerald C. Miller, Tax Div., Dept. of Justice, Washington, D.C., for petitioners.

Andrew B. Spiegel, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On December 17, 1985 the United States and Internal Revenue Service ("IRS") Special Agent Gordon Meyer ("Meyer")[1] filed a petition for enforcement of two June 27, 1984 IRS summonses (the "Summonses"). Both Summonses seek information from Particle Data, Inc. and Particle Data Laboratories, Ltd. (collectively "Particle Data," treated as a singular noun) concerning the potential tax liability of Robert Berg ("Berg"), president of both Particle Data companies. On December 27 this Court ordered Particle Data to show cause why it should not be compelled to obey the Summonses. Both sides have now briefed their respective positions, and this Court orders enforcement of the Summonses.

### Facts

Meyer was initially assigned to investigate Berg's federal tax liability for 1980–82. That investigation has been expanded to include 1983 and 1984 (Meyer Decl. ¶¶ 1–2). According to id. ¶ 3:

The purposes of the investigation are, for the five years under investigation, to determine the taxpayer's correct tax liabilities, to prepare federal income tax returns for the taxpayer for those years, if the filings of such returns were required by law, and to ascertain whether the taxpayer has committed any offense connected with the administration or enforcement of the internal revenue laws.

Having determined Berg was president of Particle Data, Meyer issued the two Summonses (Pl.Ex. 1–2, each on IRS Form 2039) whose enforcement is now sought, calling for Particle Data to appear and produce "[a]ny and all records, books, documents, correspondence and things" pertaining to Particle Data's taxable income and financial transactions for the period December 1, 1978 to January 31, 1984. Each Summons said the records demanded "includ[ed] but [were] not limited to" specific types of documents and records listed in the Summons (id.). That same day Meyer also caused summonses to be issued to ten banking and commercial institutions thought to have information about Berg's finances (Particle Data Mem. 3 and Exs. 2–3).[2]

Particle Data did not respond to the Summonses. Instead Berg petitioned this District Court to quash all 12 summonses. That petition was summarily denied by Judge Charles Kocoras (Berg v. United States, No. 84 C 6068 (N.D.Ill. Jan. 22, 1985)). Particle Data nevertheless continues its nonresponsive posture as to the Summonses,[3] and this petition ensued.

### Particle Data's Contentions

Particle Data's response to this Court's show-cause order advances several arguments in defense of its noncompliance:

1. Form 2039 does not carry an Office of Management and Budget ("OMB") control number and thus may be ignored pursuant to the Paperwork Reduction Act ("PRA"), 44 U.S.C. §§ 3507(f) and 3512.[4]

2. IRS cannot use its summons power as a criminal discovery device because:

(a) Congress has not authorized such use and

(b) if Congress has authorized such use, that authorization is unconstitutional.

On those predicates Particle Data is entitled (1) to have the Summonses quashed or (2) in the alternative to obtain discovery as to whether IRS has abandoned any civil purpose in its Berg investigation.

---

1. As the "Special Agent" title reflects, Meyer is assigned to IRS' Criminal Investigation Division.

2. Particle Data says the 10 summonses were sent, and the United States has not challenged that assertion.

3. Nothing of record indicates whether or not the 10 other summonses have been complied with.

4. All further PRA citations will simply take the form "PRA §—," using the section numbering in Title 44 rather than PRA's internal numbering.

3. IRS' use of its summons power to obtain information already in its possession demonstrates bad faith, and its petition is therefore an abuse of process.

None of those arguments has any merit.

### Form 2039

Concerned that the federal government was overburdening individuals, small businesses and others with paperwork, Congress enacted the 1980 PRA in part to help cut down that burden (PRA § 3501(1)). One means Congress prescribed was review by OMB's Director of all "information collection requests" proposed by federal agencies, to determine whether or not the information sought was both necessary to the proposing agency's functions and not already obtainable from a source within the federal government (PRA §§ 3504(c)(2)–(3) and 3507(a)(1)(A)). Requests satisfying that OMB review receive a control number, which must be displayed on the request (*id.* § 3504(c)(3)(A)). PRA § 3507(f) provides:

> An agency shall not engage in a collection of information without obtaining from the Director a control number to be displayed upon the information collection request.

That provision is not merely precatory. PRA § 3512 says:

> Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide any information to any agency if the information collection request involved ... does not display a current control number assigned by the Director or fails to state that such request is not subject to this chapter.

■ Form 2039 is an "information collection request" within the PRA § 3502(11) definition. Concededly it carries no OMB control number. But Particle Data's counsel chooses to cite only part of the statute, ignoring a flat exclusion from its coverage, and his myopia dooms the Particle Data argument.[5]

■ PRA § 3518(c)(1) provides the entire PRA (Chapter 35 of Title 44 of the United States Code) is not applicable to the collection of information:

> (A) during the conduct of a Federal criminal investigation or prosecution, or during the disposition of a particular criminal matter; [or]
>
> (B) during the conduct of (i) a civil action to which the United States or any official or agency thereof is a party or (ii) an administrative action or investigation involving an agency against specific individuals or entities....

IRS issued the Summonses pursuant to its investigation of Berg, a "specific individual[ ]." No OMB control number was required. See *Cameron v. IRS,* 593 F.Supp. 1540, 1556 (N.D.Ind.1984), *aff'd,* 773 F.2d 126 (7th Cir.1985) (process of assessment and collection of taxes falls under PRA § 3518(c)(1)(B)(ii) exception to OMB control number requirement); *Snyder v. IRS,* 596 F.Supp. 240, 250 (N.D.Ind.1984) (reaffirming *Cameron* ).[6]

Particle Data presses the further argument that even if Form 2039 is not required to carry an OMB control number, PRA § 3512 requires it so to state. That is an equally warped statutory reading. As the preceding paragraph reflects, *all* of PRA— and that includes PRA § 3512—simply

---

5. Counsel for Particle Data, who has represented other clients resisting the tax authorities in various cases before this Court, appears to find the PRA–OMB hobbyhorse one of his favorites for trying to send the IRS on merry-go-round rides. But such evangelism must not be allowed to take the place of proper lawyering— and proper lawyering requires reading and citing statutes realistically and candidly, not just wishfully and selectively. Compare the same counsel's conduct adverted to in *United States v. Wojtas,* 611 F.Supp. 118, 121–22 (N.D.Ill.1985).

6. Particle Data R.Mem. 6 says *Cameron* was "obviously wrong" because the form at issue there (IRS Form 1040, the basic personal income tax return form) now carries an OMB control number. But even if *Cameron* were wrong as to Form 1040 (a matter on which this Court expresses no opinion), Form 2039 is a very different matter, plainly issued pursuant to an IRS "investigation" of a "specific individual[ ]." In any case, neither *Cameron* nor *Snyder* limited its discussion to particular tax assessment or collection forms.

"does not apply to the collection of information" described in PRA § 3518(c)(1). And that is made crystal clear not only by the plain statutory language but by the relevant PRA legislative history Particle Data (with typical selectivity) does not cite. See S.Rep. No. 930, 96th Cong., 2d Sess. 52, *reprinted in* 1980 U.S.Code Cong. & Ad. News 6241, 6292:

> The only collections of information by a Federal agency which are exempted, and for which a person or persons could not claim protection under section 3512, are collections of information which this chapter does not apply to and which are exempted by section 3518....

In short, Particle Data's challenge to Form 2039 is without merit. While it may be every taxpayer's privilege to hold the government to the precise statutory language governing tax liability, it is equally every taxpayer's duty to observe the statutes' obvious directions.

### *"Criminal Discovery"*

Particle Data invokes *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) to urge IRS' summons authority under 26 U.S.C. § 7602 ("Section 7602") cannot be used as a discovery mechanism in a purely criminal investigation. *LaSalle*, however, really said something more subtle. First the Court recognized Section 7602 and the tax-law enforcement system draw no distinction between the civil and criminal elements of the tax laws, which are "inherently intertwined" (437 U.S. at 309). IRS investigations look into both criminal conduct and behavior forming a predicate for civil penalties (*id.* at 310–11, 98 S.Ct. at 2365). But IRS is of course not a prosecutorial agency: Only when IRS recommends prosecution to the Department of Justice ("DOJ") "do the criminal and civil aspects of a tax fraud case begin to diverge" (*id.* at 311, 98 S.Ct. at 2365).

Thus *LaSalle* recognized the "prophylactic restraint" prohibiting use of Section 7602 summonses once IRS refers a case to DOJ. It went further: Even earlier than such reference, Section 7602 summonses must be used "in good-faith pursuit of the congressionally authorized purposes" (*id.* at 307, 98 S.Ct. at 2363). Because Congress authorized IRS to pursue "normally inseparable" criminal and civil tax fraud investigations, use of the Section 7602 summons power *solely* to gather evidence for a criminal prosecution would constitute bad-faith pursuit of congressional ends (*id.* at 314, 98 S.Ct. at 2366).

But *LaSalle* was at pains to observe that an individual IRS agent's singleminded interest in the criminal aspects of a tax fraud investigation was not evidence of *agency* bad faith: "[L]ayers of review" of an agent's conclusions may result in a decision to seek civil penalties notwithstanding the agent's purpose (*id.* at 314–15, 98 S.Ct. at 2366–67). Thus to show bad faith a summonsed party bears the "heavy" burden of showing IRS itself has an "institutional posture" of having abandoned pursuit of civil remedies in the taxpayer's case (*id.* at 316, 318, 98 S.Ct. at 2367–68).

Our Court of Appeals has recognized the obvious difficulty of meeting that burden. *United States v. Kis*, 658 F.2d 526, 539–42 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982) held a summonsed party was entitled to a limited amount of discovery as to whether or not IRS had institutionally abandoned the pursuit of civil remedies and was committed solely to developing a criminal case for DOJ to prosecute. Particle Data says it is at least entitled to such discovery.

But again Particle Data has ignored relevant statutory provisions. For in 1982 (post-*Kis*) Congress amended Section 7602 by adding the following language:

> (c) No administrative summons when there is Justice Department referral.—
>
>> (1) Limitation of authority.—No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice department referral in effect.—For purposes of this subsection—

(A) In general.—A Justice Department referral is in effect with respect to any person if—

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws....

*Moutevelis v. United States,* 727 F.2d 313, 314–15 (3d Cir.1984) teaches Section 7602(c) creates a "bright line" test of good faith marked by the actual referral of a case to DOJ, thus eliminating the difficult and problematic "institutional posture" test of *LaSalle.*

■■■ In other words, Congress is the best judge of its own purposes, and that body has now laid down a rule for determining whether or not IRS is following those purposes in good faith, purposes that may include (Section 7602(b)):

inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

Unless and until there is a "Justice Department referral," Congress has given IRS the benefit of the doubt. Meyer Decl. ¶ 4 says no such referral is in effect as to Berg, and Particle Data does not suggest that is false. Thus there is nothing to discover under *Kis,* for the "institutional posture" inquiry is now irrelevant.

Of course use of a Section 7602 summons solely for criminal investigation was only one type of bad faith discussed in *LaSalle* and earlier cases. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964) had earlier said:

[IRS] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within [IRS'] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed.... [A]n abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the investigation.

Section 7602(c) does not disturb any of that language, but insofar as Particle Data asserts IRS' bad faith stems from an institutional posture of criminal investigation, *Powell* is inapposite and the statute controls. *Pickel v. United States,* 746 F.2d 176, 183–85 (3d Cir.1984), cited by Particle Data, is not to the contrary and actually reaffirmed the *Moutevelis* analysis.

■■■ As a last gasp Particle Data suggests any collection by IRS of evidence of potential criminal activity via Section 7602(b) and (c) is unconstitutional. But though Particle Data (unlike many so-called "tax protesters") is represented by experienced counsel, that contention is simply advanced as an ipse dixit. Pro se litigants get the benefit of special rules under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), but lawyers owe courts more than that sort of bald assertion if they expect their claims to be considered seriously. It is not up to this Court to parse the Constitution and all its engrafted doctrines to discover the basis of Particle Data's claim. That invitation is declined.[7] No showing has been made that IRS has overstepped the bounds of its summons power.

### Residual Bad Faith Inquiry

As the earlier-quoted language from *Powell* indicates, the bad faith use of Sec-

---

**7.** Perhaps the most obvious candidate for a constitutional claim would be an asserted violation of the Fifth Amendment privilege against self-incrimination. Though that privilege would not apply in a civil investigation, it would come into play once the case turned into a bona fide criminal prosecution. But such a claim would plainly fail because *Particle Data* is not the subject of the criminal investigation it claims IRS is pursuing: Berg is. Third parties have no standing to assert Berg's Fifth Amendment rights. See *Fisher v. United States,* 425 U.S. 391, 393–97, 96 S.Ct. 1569, 1572–74, 48 L.Ed.2d 39 (1976) (collecting cases).

tion 7602 summonses is not limited to criminal case discovery. Particle Data says another type of bad faith is present here: use of the Summonses to obtain information IRS already has.

But Particle Data offers no factual basis for that claim. Though ten other companies and banks have been summonsed as to *their* information about Berg's finances, it is a non sequitur to assume IRS got from them (assuming it got anything) what it seeks from Particle Data. To the contrary, Meyer Decl. ¶ 9 says:

> The data demanded by the summonses are not already in the possession of the Internal Revenue Service.

Particle Data Mem. 10 merely asserts that is "inconceivable," for Meyer's investigation began in June 1984. Particle Data therefore demands *Kis* discovery to find out whether Meyer is telling the truth.

*Kis* however does not go so far. It said (658 F.2d at 537) the *Powell* good faith test was satisfied by an IRS agent's affidavit stating the summonsed information was not already in IRS' possession. And where the government's showing as to one *Kis* defendant was held inadequate, the court remanded (*id.* at 538) (emphasis added and footnote omitted):

> for the limited purpose of hearing evidence, *by affidavit* or otherwise, concerning the Government's possession of the summoned materials.

Only where the issue was IRS' "institutional posture" regarding criminal prosecution did *Kis* require further discovery and, if justified, an adversary hearing (*id.* at 539–41). That followed from the heavy burden thrust on the summonsed party by the peculiar "institutional posture" inquiry mandated by *LaSalle* (*id.* at 538–39). But now that such inquiry is superseded by Section 7602(c)'s simple test, *Kis* discovery is a dead letter.

Indeed the result would be no different even if *Kis* discovery were still viable post-Section 7602(c). Such discovery would cover only (658 F.2d at 539, quoting *United States v. Garden State National Bank*, 607 F.2d 61, 71 (3d Cir.1979)):

> [1] the identities of the investigating agents,
>
> [2] the date the investigation began,
>
> [3] the dates the agent or agents filed reports recommending prosecution,
>
> [4] the date the district chief of the Intelligence Division or Criminal Investigation Division reviewed the recommendation,
>
> [5] the date the Office of Regional Counsel referred the matter for prosecution,
>
> [6] the dates of all summonses issued under 26 U.S.C. § 7602, [and]
>
> [7] the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

Items 3, 4, 5 and 7 are obviously irrelevant to the present inquiry, and Particle Data already knows the information responsive to items 1, 2 and 6. *Kis* entitles Particle Data to nothing more (see 658 F.2d at 544, limiting discovery to *Garden State*'s seven inquiries).

In short, Particle Data has alleged no *specific facts* to rebut Meyer's statement (*Kis*, 658 F.2d at 543), nor is it entitled to any discovery that could conceivably develop such facts. Further, though Particle Data simply asserts the contrary, it is not facially obvious why the information sought in the 10 other summonses must be deemed duplicative of the information sought from Particle Data. Particle Data has not so much as explained what its relations with those 10 banks and companies are—presumably information within its own control.

Summons enforcement actions are not intended to be lengthy pitched battles (*Kis*, 658 F.2d at 535). Particle Data has resisted the Summonses for almost two years now: This investigation should "advance toward the ultimate determination of civil or criminal liability, if any" (*id.*).

*Conclusion*

None of the arguments Particle Data advances in response to this Court's show-cause order has merit. Particle Data is ordered to respond to the Summonses on or before May 12, 1986.