**UNITED STATES of America and James A. Hill, Special Agent, Internal Revenue Service, Petitioners–Appellants,**

v.

**James E. MICHAUD and Mary L. Michaud, Respondents–Appellees.**

Nos. 89–1684, 89–1986.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1989.

Reargued En Banc May 30, 1990.

Decided July 24, 1990.

Gary R. Allen, Charles E. Brookhart, Michael Roach, William A. Whitledge, James A. Bruton, Shirley D. Peterson, Mary E. Bielefeld, U.S. Department of Justice, Tax Div., Appellate Section, Washington, D.C., for petitioners-appellants.

F. Patrick Matthews, Weiss, Berzowski, Brady & Donahue, Milwaukee, Wis., for respondents-appellees.

Before BAUER, Chief Judge, CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION and KANNE, Circuit Judges.

BAUER, Chief Judge, joined by CUMMINGS, HARLINGTON WOOD, Jr., CUDAHY, COFFEY, FLAUM and KANNE, Circuit Judges.

In this case we reconsider *United States v. Michaud*, Nos. 89–1684 & 89–1986, 1990 WL 25073 (7th Cir. March 8, 1990) (attached as an appendix to the dissent hereto) ("*Michaud I*"), in which a panel of this court reversed an order by District Judge Terence T. Evans. Judge Evans quashed several summonses issued by the Internal Revenue Service ("the Service") which directed the Michauds to submit to fingerprinting and to provide handwriting exemplars. The Service claimed (and still claims) that this information is relevant to its civil investigation into the employment and unemployment tax liabilities of Superior Engineering, Inc., a Green Bay corporation of which the Michauds were shareholders and officers. In the order at issue here, Judge Evans appeared to reject this claim and denied enforcement based in some part on that reason. The panel in *Michaud I* found reversible error in that decision, holding that Judge Evans had no basis for quashing the summonses. Because Judge Evans' order is ambiguous on several potentially dispositive points, we depart from the tack taken by the panel and remand to Judge Evans for additional findings.

At the heart of this controversy lie important questions of when and how the Service can, in the course of a civil investigation, bring to bear against a taxpayer the full weight of federal enforcement mechanisms. Primary responsibility over these questions has been entrusted to the federal district courts, which have the power and duty to monitor these investigations through the enforcement (and non-enforcement) of the Service's demands on taxpayers. 26 U.S.C. §§ 7402, 7604 & 7605. *See also United States v. Bisceglia*, 420 U.S. 141, 146–47, 95 S.Ct. 915, 918–19, 43 L.Ed.2d 88 (1974) and the cases cited there. "Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned." *Id.* at 151, 95 S.Ct. at 921.

■ The above-cited sections of the Internal Revenue Code give district courts the authority to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws," § 7402(a), and to "make such order[s] as [they] deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the [Service's] summons...." § 7604(b).[1] Under this authority, district courts deny enforcement of the Service's demands when they find that the Service is acting in bad faith or attempting to abuse the court's process. "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or put pressure on him to settle a collateral dispute, or for any purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

---

1. *See also* 26 U.S.C. § 7402(b):

If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which the person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

The district courts also enforce the Code's restrictions on the time, place and manner of the Service's examinations of taxpayers contained in § 7605:

No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the [Service], after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

26 U.S.C. § 7605(b).

Along with this power and duty to check for abuse, district courts hold the Service to the burden of making a *prima facie* showing of "good faith." As established in *Powell,* the *prima facie* case must include the following elements:

> [The Service] must show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [Service's] possession, and [4] that the administrative steps required by the Code have been followed....

379 U.S. at 57–58, 85 S.Ct. at 255. Thus, a district court can deny the Service's demands on a taxpayer if it finds that the Service has fallen short of establishing these four elements, or if the taxpayer otherwise establishes that the Service's request is in bad faith. *Cf. United States v. White,* 853 F.2d 107 (2nd Cir.1988); *United States v. Texas Heart Institute,* 755 F.2d 469 (5th Cir.1985); *United States v. John G. Mutschler & Assoc., Inc.,* 734 F.2d 363, 367 (8th Cir.1984).

■■■ Beyond this "good faith" requirement, the Code has long prohibited enforcement of a Service summons after the matter has been referred to the Justice Department for criminal prosecution. *See* 26 U.S.C. § 7602(c) and its predecessors. *See also Donaldson v. United States,* 400 U.S. 517, 532–36, 91 S.Ct. 534, 543–45, 27 L.Ed.2d 580 (1971). The Supreme Court, in

*United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), read § 7602 to include a prohibition against the Service's use of an administrative summonses solely for criminal investigatory purposes. In *LaSalle,* the Court reviewed a decision of this court in which we held that enforcement can also be denied in certain cases short of a formal referral to the Justice Department: "[T]he use of an administrative summons solely for criminal purposes is a quintessential example of bad faith." *United States v. LaSalle National Bank,* 554 F.2d 302, 309 (7th Cir.1977). The Supreme Court agreed that enforcement can and should be denied when the Service is attempting to exploit its civil investigatory powers as a *de facto* grand jury: "We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution." *LaSalle,* 437 U.S. at 316–17, 98 S.Ct. at 2367–68. (The Court reversed our decision on the outcome, however, because it found insufficient evidence of such an institutional commitment. *Id.,* at 318–19, 98 S.Ct. at 2368.) Thus, under § 7602 and *LaSalle,* a summons issued by the Service after it has referred the matter to the Justice Department, or after it, in an institutional sense, has abandoned any proper civil purpose, should not be enforced.[2]

---

**2.** There is some debate as to whether this "solely criminal purpose" ground discussed in *LaSalle* survived the 1982 amendments to § 7602, and specifically the addition of § 7602(b). *Compare United States v. Stuart,* 489 U.S. 353, 109 S.Ct. 1183, 1189, 103 L.Ed.2d 388 (1989) ("When Congress codified the essence of our holding [in *LaSalle*] in § 7602(c), it apparently shared our concern about permitting the IRS to encroach upon the rights of potential criminal defendants."); *Hintze v. I.R.S.,* 879 F.2d 121, 127 (4th Cir.1989) ("The taxpayers here might well have prevailed, moreover, had they succeeded in showing that the IRS was pursuing its investigation for the sole purpose of building a case on anticipated criminal charges," citing *LaSalle*); and *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 391–92 (1st Cir.1988) ("[T]he IRS must not have abandoned the pursuit of civil tax determination or collection," citing *LaSalle*) *with La Mura v. United States,*

765 F.2d 974, 980 n. 9 (11th Cir.1985) (suggesting that the 1982 amendments limited the grounds for non-enforcement to actual referral and eliminated *LaSalle*'s "institutional commitment" ground); *Pickel v. United States,* 746 F.2d 176, 183–84 (3d Cir.1984) (holding that "Congress codified the position of the dissenters in [*LaSalle*] by enacting the [1982] amendments to section 7602") *and Segmond v. United States,* 589 F.Supp. 568, 573 (S.D.N.Y.1984) ("Although prior to September 4, 1982, a summons could not issue solely for a 'criminal purpose' (i.e. to inquire into possible criminal conduct), [the 1982 amendments] abolished that 'criminal purpose' defense."). We also note that, in *United States v. Kemper Money Market Fund, Inc.,* 781 F.2d 1268 (7th Cir.1986), a panel of this court was critical of *LaSalle* and hinted that the 1982 amendments may have limited it, but did not reach the issue because the case arose under the pre-amendment version of § 7602. *Id.* at 1276–

■ In this case, it is impossible to tell from Judge Evans' order whether and to what extent his decision to quash the summonses rested on any one of (or perhaps all of) these grounds. The operative passage from his brief order merits quotation in full. Judge Evans begins with a discussion of an omission made by the Service's case agent in his affidavit to the court. Judge Evans indicates that this omission (failing to mention that the Michauds did appear at the requested location and partially comply with the Service's demands) led him to an "improper conclusion" regarding the nature of the Michauds' actions, but he continues:

> Although I believe the failure to provide me with the full story of what occurred ... in and of itself justifies denying enforcement to the summonses, a more fundamental reason for denying enforcement exists. The purpose of the investigation by the [Service] is "to investigate the federal employment and unemployment tax liabilities of Superior Engineering ... for the taxable years 1983 through 1986" [quoting government submissions]. I do not think the handwriting or the fingerprints of the Michauds are necessary to establish the tax liabilities of Superior Engineering. Furthermore, requiring them to appear at a police station to be fingerprinted appears to be a little heavy-handed and perhaps violative of 26 U.S.C. § 7605(b)....
>
> Also, it should be noted that assessments have been issued against Superior Engineering alleging that its taxes were not properly stated and that the correct amount (higher, of course) has been determined by the [Service]. Implicit in this action is the assumption that the [Service] knows the tax liabilities of Superior Engineering. Therefore, the reason, if there ever was a good one, for wanting the Michauds' handwriting and fingerprints seems to have evaporated. And lastly, it appears that the aroma of a criminal proceeding is emanating from this investigation, and the government should not be allowed to use these civil

proceedings to arm itself for that fight should it eventually occur.

Unfortunately, this passage raises at least as many questions as it answers. First, does the court's decision actually rely on the omission in the agent's affidavit, and/or the "heavy-handedness" of requiring the Michauds to appear at a police station to be fingerprinted? As the panel in *Michaud I* noted, *infra* (appendix) at 758–759, these factors, at least as they are currently developed in the record, do not qualify as the kind of "abuse of process" or harassment that trigger the court's power under either *Powell* or § 7604(b), nor do they appear to make the Service's demand "unnecessary" as described in § 7605(b). The misleading statement was found by Judge Evans to be unintentional, and merely choosing a police station for the fingerprinting, assuming it was reasonably convenient and was not chosen for some improper purpose, does not appear to constitute harassment. Because the record is inadequate to confirm or deny such dispositive assumptions, however, this issue must be remanded to Judge Evans, who has dealt first-hand with these parties and is in a much better position to assess their conduct, before it can be resolved by this court.

Second, how are we to interpret the court's discussion of the purpose(s) of the investigation and the relevance of the requested information thereto? Judge Evans states that "*I do not think* the handwriting or the fingerprints of the Michauds are *necessary* ...,*" and that "the reason, if there ever was a good one, for wanting the Michauds' handwriting and fingerprints *seems* to have evaporated" (emphasis added). He also speaks of an "assumption" that is "implicit" in the fact that assessments have issued against Superior Engineering. By these statements, does Judge Evans mean to say that, from his review of the facts and the testimony and behavior of the parties, the purpose of the investigation was limited to the corporation's tax liabilities, and that, because this purpose has

---

77. *See also United States v. Particle Data, Inc.,* 634 F.Supp. 272, 276–77 (N.D.Ill.1986).

For the reasons discussed below, however, we need not, and do not, resolve this debate here.

been exhausted, the requested information is no longer relevant? Or is it that the requested information was never relevant to the sole, legitimate purpose of the investigation, making the government's request unenforceable *ab initio* ? Explicit findings along these lines could result in the conclusion that the government has not met the four-part "good faith" predicate established in *Powell*, 379 U.S. 48, 85 S.Ct. 248, that the sole remaining purpose is to harass the Michauds, or that enforcement of the summonses would otherwise be an abuse of process. The statements in Judge Evans' order, however, though sufficient to raise these troubling concerns, do not constitute the findings necessary to resolve them.

Third, and finally, by expressing concern that "the aroma of a criminal proceeding is emanating from this investigation, and the government should not be allowed to use these civil proceedings to arm itself for that fight," was the court's intent to invoke the *de facto* grand jury concerns discussed in *LaSalle*, 437 U.S. 298, 98 S.Ct. 2357? By its terms, *LaSalle* requires the court to find evidence that the Service has made an "institutional commitment" to refer the matter to the Justice Department, *id.* at 316–17, 98 S.Ct. at 2367, and this court has held that, to successfully raise the "sole criminal purpose" defense, a taxpayer must come forward with specific facts that establish that the summons has *"no* civil purpose whatsoever,"* and that the Service "has abandoned any institutional pursuit of a civil tax determination." *United States v. Kis*, 658 F.2d 526, 538–42 (7th Cir.1981) (emphasis in original), *cert. denied sub nom. Salkin v. United States*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Judge Evans' one-sentence statement showing concern over an "aroma," without

more, does not constitute a sufficient finding to raise the *LaSalle* issue.

Because of these ambiguities, we remand this case to Judge Evans for additional findings. Specifically, the court should develop further whether the Service is harassing the Michauds for some improper purpose; whether it is attempting to abuse the court's process; whether it has failed to establish its *Powell* good faith predicate; whether it has made an "institutional commitment" to refer the Michauds to the Justice Department for criminal prosecution; and, importantly, which of these grounds (if any) it finds dispositive. On remand, the court should also undertake whatever further proceedings are necessary and appropriate—mindful of the rules and procedures for summons enforcement proceedings we established in *United States v. Kis*, 658 F.2d 526—to obtain the evidence necessary to make these findings. Only then can this court assess and resolve the issues discussed in this opinion; issues that a majority of this court found sufficient to merit this *en banc* rehearing.

COFFEY, Circuit Judge, concurring.

I write separately to explain why I have changed my vote from the original panel decision. At the *en banc* hearing, it became evident through our exhaustive questioning that the sole purpose of the summonses at issue here was to gather information, pursuant to a criminal investigation, prior to referring the case to the Justice Department for prosecution.

In *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court agreed that an administrative summons could not be used solely for the purposes of a criminal investigation.[1] In order to show that "an investigation has solely criminal purposes[,] ... those opposing enforcement of a summons

---

**1.** If, as the dissent asserts, section 7602(b) overturns *LaSalle* and allows for the use of administrative summonses solely for the purpose of criminal investigation, the section's constitutionality is suspect—would this not legislate away the due process guaranteed by the fifth amendment? It is clear, however, that Congress did not intend section 7602(b) to apply to criminal discovery: "[T]he provision is in no way intend-

ed to broaden the Justice Department's right of criminal discovery or to infringe on the role of the grand jury as a principal tool of criminal prosecution." Report of the Senate Finance Committee, S.Rep. No. 97–494, vol. 1, p. 286 (1982), U.S.Code Cong. & Admin.News 1982, 781, 1031, *quoted in U.S. v. Stuart*, 489 U.S. 353, 109 S.Ct. 1183, 1189, 103 L.Ed.2d 388 (1989).

... bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *Id.* at 316, 98 S.Ct. at 2367. Because all civil liability for Superior Engineering, Inc. had been determined for the years in question prior to the summonses, there could be no "valid civil tax determination or collection purpose" in summoning the Michauds in their capacity as corporate officers. This application of *LaSalle* is not a "fuzzy standard" as suggested by the dissent, but a clear, bright-line rule: When the Service makes a final determination of civil liability, its administrative investigation powers end.

I find a further reason for remand in the revelation that Robert W. Pasternak, the president of Superior Engineering, Inc., pled guilty to criminal charges related to his activities as a corporate officer ten weeks after the district court quashed the summonses.[2] The proximity of the two events makes it obvious that the investigation by the Department of Justice began before the summonses were quashed. This raises the issue of whether a Justice Department referral was or is in effect regarding Superior Engineering, Inc., as argued by the Michauds in their Petition for Rehearing. The stated purpose of the summonses (somewhat questionable) is "to determine the correctness of the federal employment and unemployment tax returns and liabilities of Superior Engineering, Inc." Petition to Enforce Internal Revenue Service Summonses ¶ 6. Thus, if a referral in regard to Superior Engineering, Inc. is in effect, the summoning of corporate officers to investigate the corporation is beyond the Service's statutory authority, and the summonses must be quashed.

Special Agent Hill testified, and Ms. Shirley Peterson, Assistant Attorney General for the Tax Division of the Justice Department, affirmed, that the Internal Revenue Service had not recommended that any criminal prosecution be instituted against Superior Engineering, Inc. Those state-

ments of themselves fall far short of meaning that no referral is in effect. 26 U.S.C. § 7602(c)(2)(A)(ii) states that a "referral is in effect with respect to any person" not only when a recommendation has been made, but also when "any request is made ... for the disclosure of any return or return information ... relating to such person." During the Department of Justice's investigation of Mr. Pasternak, therefore, if the Department of Justice requested income tax return information on Superior Engineering, Inc., a referral was in effect. In light of the fact that the criminal information against Mr. Pasternak related to his activities as a corporate officer mishandling the corporate taxes, I know of no way for the Department of Justice to have determined Mr. Pasternak's liability without any examination of the corporate tax return information.

On remand, therefore, the court should allow defendants to determine whether the Department of Justice had indeed requested the returns from, or return information regarding, Superior Engineering, Inc.'s taxes for the years 1983 through 1986. If so, that is the end of the matter, and the summonses purportedly investigating Superior Engineering, Inc. must be quashed.

POSNER, Circuit Judge, with whom EASTERBROOK, RIPPLE, and MANION, Circuit Judges, join, dissenting.

There is neither material ambiguity in the district court's opinion nor any possible ground on which to deny enforcement of the government's summons. We should, as the panel did, reverse outright. (I attach the panel's opinion as an appendix to this dissent.) The remand throws a monkey wrench into the machinery for the investigation of tax violations and in the course of doing so commits a serious error in the interpretation of the tax-summons statute. A fishing expedition into the government's motives, such as the court invites the district judge to conduct, is inconsistent with the summary nature of pro-

---

**2.** Mr. Pasternak waived his right to the prosecution of the matter by indictment and pled guilty

to charges contained in the Information filed by U.S. Attorney John E. Fryatt.

ceedings to enforce tax summonses. *United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981); *Alphin v. United States*, 809 F.2d 236 (4th Cir.1987). Worse, the court allows the district judge to troll for fish in an area that Congress has placed beyond judicial authority.

The Internal Revenue Service issued a summons directing the Michauds to appear and be fingerprinted and give handwriting exemplars. They refused to cooperate and the government therefore petitioned for enforcement of the summons under 26 U.S.C. § 7604. The district judge refused to enforce the summons on three grounds: the IRS agent's affidavit in support of the petition had stated falsely that the Michauds had failed to appear (they had appeared, but had refused to be fingerprinted or to complete the handwriting exemplars); the IRS had been "heavy-handed" in demanding that the Michauds appear at a police station for these purposes rather than at a federal office; and the fingerprints and handwriting exemplars were not germane to the stated purpose of the investigation, which was to determine the tax liabilities not of the Michauds but of their corporation, suggesting that the real object of the investigation might have been to nail the Michauds for criminal violations. The relative weight that the district judge gave to each of these grounds for refusing enforcement is uncertain, but this uncertainty is irrelevant; none of the grounds, whether singly or in combination, justified the refusal.

To refuse to enforce a summons because the government has made an immaterial mistake (saying the Michauds had failed to appear, rather than that they had failed to cooperate) violates the principle that courts do not punish governmental misconduct by dismissing valid cases. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). And if there was an impropriety (never shown, by the way) in ordering the Michauds to appear at a police station rather than at a federal office, the proper response would have been to order them to appear elsewhere rather than to excuse them from appearing anywhere.

Finally and most important, the fact that the government may have wanted to use the summons procedure to obtain evidence for use in a criminal proceeding against the Michauds is not an authorized ground for refusing to enforce the summons. The statute could not be clearer. "The purposes for which [the IRS may issue and execute a tax-investigation summons] include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(b). See also S.Rep. No. 494, 97th Cong., 2d Sess. 584 (1982), U.S.Code Cong. & Admin.News 1982, 1356; *United States v. Abrahams*, 905 F.2d 1276 (9th Cir.1990); *Moutevelis v. United States*, 727 F.2d 313 (3d Cir.1984). The only exception is "if a Justice Department referral is in effect with respect to such person," which it is if the IRS "has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, [the recipient of the summons] for any offense connected with the administration or enforcement of the internal revenue laws." §§ 7602(c)(1), (2)(A)(i). Since no such recommendation has yet been made, no referral is in effect and the IRS is entitled to use the summons to investigate the potential criminal liability of the Michauds.

The court disagrees. From the statement in *United States v. Stuart*, 489 U.S. 353, 109 S.Ct. 1183, 1189, 103 L.Ed.2d 388 (1989), that in enacting section 7602(c) Congress "apparently shared our concern [expressed in an earlier decision] about permitting the IRS to encroach upon the rights of potential criminal defendants," my brethren infer that the IRS is not permitted to use the summons procedure after the Service "has abandoned any proper civil purpose," even if there has been no referral to the Justice Department. This misunderstands *Stuart*; it also misunderstands section 7602(c) and its interplay with 7602(b). All the passage quoted from *Stuart* means is that subsection (c) defines the forbidden encroachment as occurring when the case is referred to the Justice Department. At that point the recipient of the summons becomes a potential criminal defendant

upon whose rights the IRS may not encroach. Before that happens, however, the Service's powers are defined by subsection (b), which *expressly* authorizes the use of the summons procedure to investigate criminal offenses and says nothing about requiring a civil purpose. Nothing in *Stuart* is to the contrary. The rule our court adopts today in the text of the opinion (and then questions in the last sentence of footnote 2)—that even if no referral has taken place (and it has not in this case) enforcement can be denied upon a showing that the IRS has no remaining civil purpose for the investigation and has made up its mind to refer the case to the Justice Department—was the rule, or rather standard, before section 7602 assumed its present form. It is no longer. A fuzzy standard, requiring a degree of factual inquiry infeasible in a summary enforcement proceeding, has been replaced by a bright-line rule.

Judge Coffey is quite right that "Congress did not intend section 7602(b) to apply to criminal discovery." But what this means, as the passage he quotes from the legislative history makes clear, is that *the Justice Department* may not use the statute to assist it in its criminal prosecutions; nor may it enlist the IRS to use the summons power in aid of the Department's prosecutions. But all this is *after* referral, which is clearly and carefully defined in section 7602(c). Before referral, the IRS is free to use the summons procedure to investigate potential criminal liability. That is what section 7602(b) says, and that is what it means.

Perhaps it is time the Supreme Court made all this crystal clear, for we are not the only court to have been confused by *Stuart*. See *Hintze v. Internal Revenue Service*, 879 F.2d 121, 128 n. 8 (4th Cir. 1989).

Since the government's entitlement to enforcement of the summons is plain, *United States v. Abrahams, supra*, no purpose can be served by remanding the case to the district judge for further findings or the taking of evidence. We should reverse with directions to enforce the summons.

Argued November 30, 1989.

Decided March 8, 1990.

Amended April 13, 1990.

Before POSNER, COFFEY, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The government appeals from an order quashing a summons (actually, several summonses, but for simplicity's sake we shall pretend there was only one) directing the respondents, Mr. and Mrs. Michaud, to appear in a Green Bay police station to be fingerprinted and give handwriting exemplars in connection with the Internal Revenue Service's investigation of the tax liability of a corporation of which the Michauds are shareholders, directors, and officers. For reasons wholly unclear to us, the agent of the Internal Revenue Service who issued the summons is named as a petitioner (plaintiff) and appellant along with the government; the practice is common, but we can find no ground or reason for it.

In addition to quashing the subpoena, Judge Evans ordered the government to pay the Michauds' attorney's fees, precipitating a second appeal, the disposition of which follows automatically from our disposition of the first.

The Michauds, accompanied by their lawyer, had come to the Green Bay police station as the summons directed them to do, but they refused to be fingerprinted. And although Agent Hill asked each of them to fill five pages with their handwriting, each refused, on the advice of their lawyer, to write more than a page and a half. The lawyer's position was that a page and a half was enough for the government's purpose and anything more would be oppressive.

The government petitioned for enforcement of the summons under 26 U.S.C. § 7604. The petition was in the form of an affidavit by Agent Hill in which he stated that he was investigating the corporation "to verify the correctness of [its] federal

employment and unemployment tax returns and to determine its correct tax liabilities. If it is determined that the [corporation's] tax returns are incorrect or that additional taxes are due and owing, I will also determine whether any of the criminal provisions of the Internal Revenue Code have been violated, [and] whether James Michaud, Mary Michaud, or others will be recommended to the United States Department of Justice [for prosecution]." But, the affidavit adds, "as of the date of this declaration, the Internal Revenue Service has not recommended criminal prosecution of the taxpayer or either [Mr. or Mrs. Michaud] to the United States Department of Justice." Then, after summarizing the summons and explaining how it was served, the affidavit states that "on March 23, 1988 [the return date in the summons, and the date on which the Michauds appeared at the Green Bay police station], the [Michauds] failed to appear before me, or to comply with the summons by providing handwriting exemplars and allowing fingerprints to be taken of them." The affidavit goes on to explain that the fingerprints and handwriting exemplars are necessary to determine whether the Michauds filled out or handled the corporation's tax returns and other pertinent documents. The use of the summons authority to compel handwriting exemplars has been held to be proper. *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980).

The district judge refused to enforce the summons on a combination of grounds: the affidavit was false in stating that the Michauds had not appeared on March 23; the government had been "heavy-handed" in demanding that the Michauds be fingerprinted at a police station rather than at an Internal Revenue Service office or some other federal office; the fingerprints and handwriting of the Michauds were not germane to the stated purpose of the investigation, which was to determine their corporation's tax liabilities. At oral argument, the Michauds' counsel acceded to a description of the implicit standard used by the

district judge to quash the subpoena as an "aroma test," and argued that it is the right test to use in these cases.

It may be the right test in some ultimate ethical or political sense, but it is not the statutory test, and judges are obliged to enforce constitutional statutes. The only express statutory ground for quashing a tax summons is that the Internal Revenue Service has referred the matter under investigation to the Justice Department for criminal prosecution. 26 U.S.C. § 7602(c). Agent Hill denied that there had been such a referral, and the judge accepted the denial. Since a summons is process, and abuse of process is a tort, the issuance of a tax summons may also be resisted—courts have said—if the summons was issued in bad faith, that is, "for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute." *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). See also *United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir.1987); *Groder v. United States*, 816 F.2d 139, 144 (4th Cir.1987); *United States v. Author Services, Inc.*, 804 F.2d 1520, 1524–25 (9th Cir.1986); *Pickel v. United States*, 746 F.2d 176 (3d Cir.1984). Moreover, we may assume without having to decide that since an order to enforce a summons is a form of injunction, the courts retain their normal powers to withhold the issuance of an injunction that would violate the principles of equity because the injunction had been sought in bad faith (but this just duplicates the abuse of process ground), or because the injunctive process was being used to harass the defendant with redundant litigation (ditto) or would impose unnecessary costs on innocent third parties, or because the injunction has a broader sweep than can be justified. (Of course the fact that an order is equitable in character does not mean that it necessarily is appealable as an injunction without regard to finality. 28 U.S.C. § 1292(a)(1); *Conticommodity Services, Inc. v. Ragan*, 826 F.2d 600, 601 (7th Cir.1987).)

But the fact that an application for enforcement contains an immaterial mistake

or that the government (or other plaintiff or petitioner) is acting "heavy-handed" in some undefined sense will not do. These derelictions do not constitute abuse of process. And the equitable discretion of a modern federal judge is not the uncanalized discretion of a medieval Lord Chancellor. *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1245 (7th Cir.1989). Moreover, tax summons proceedings, being summary, *Alphin v. United States*, 809 F.2d 236 (4th Cir.1987); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981), are not the right occasion for free-wheeling inquiries into the motives and methods of the tax authorities. Cf. *In re Grand Jury Proceedings*, 894 F.2d 881, 884 (7th Cir.1990). All the talk about abuse of process and equitable defenses may be, in the tax-summons setting, just that. The cases in which an appeal to equitable discretion or an invocation of the tort concept of abuse of process will actually defeat the issuance of the summons may well constitute a null set. Cf. *Alphin v. United States, supra; Pickel v. United States, supra*, 746 F.2d at 183–85.

Agent Hill should not have said that the Michauds had not appeared, since they did appear. But from the government's standpoint, appearing and refusing to be fingerprinted or to give handwriting exemplars was the functional equivalent of nonappearance, so it is possible that the agent was innocently if ineptly interpreting "appear" rather than trying to mislead the court. A more important point is that if there was misrepresentation, deliberate or otherwise, it was immaterial. The dismissal of a proceeding is an excessive sanction for a mistake that, being immaterial, could not have harmed the defendant; the days when courts dismissed proceedings to express displeasure with governmental conduct even when there was no prejudice to defendants are over. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Nor is there any

basis for Michaud's argument that the request for a five-page exemplar was so burdensome as to constitute an abuse of process. Maybe handwriting experts would testify that five pages were more than enough; but Michaud offered no such testimony—and it was just as well, since even if five pages are unnecessary, the burden of filling five pages with one's handwriting is not an onerous one.

As for the government's "heavy-handedness" in ordering the Michauds to appear at a police station to give their fingerprints and handwriting exemplars, we cannot agree that it is a ground for quashing the summons. The summons procedure is a lawful method of criminal investigation, 26 U.S.C. § 7602(b); *United States v. Millman*, 822 F.2d 305, 308 (2d Cir.1987); *Pickel v. United States*, 746 F.2d 176, 183–84 (3d Cir.1984), and the Green Bay police station is a proper site at which to conduct it. It would be different if the government had gratuitously ordered the Michauds to appear at an inconvenient location, or an indecorous one (for example, a prison). It did not do so, and therefore we need not decide whether the district judge would have the power to impose reasonable conditions in the order enforcing the summons. If he did have this power, then even if the police station was not a proper site at which to direct the Michauds to appear, all that would follow is that the judge should have directed them elsewhere; he should not have quashed the summons altogether unless persuaded on adequate evidence that the government was deliberately harassing the Michauds.

*United States v. Author Services, Inc.*, 804 F.2d 1520, 1525 (9th Cir.1986), holds that district courts do have power to impose conditions in orders enforcing tax summonses. *United States v. Barrett*, 837 F.2d 1341, 1349–51 (5th Cir.1988) (en banc) (per curiam), however, is to the contrary; and we are distressed that the government, rather than acknowledging the holding of *Barrett* (the government cited *Barrett*, but on a different issue), assured us in its brief—citing a decision that *Barrett* appears to have overruled—that the judge

*can* impose reasonable conditions. In so arguing, the government made no effort to distinguish the position, apparently contrary, that it had taken in both *Barrett* and *Author Services.* We expect more straightforward advocacy from the government, and we begin to understand Judge Evans' distress at what he believed to be misrepresentations in Agent Hill's affidavit.

The issue of a conditioning power may have little practical significance. If the judge turns down a request for enforcement on grounds that could be cured by changes in the subpoena, the government will be back before him with a revised subpoena, and it will be as if the judge had granted the request conditionally. The court in *Barrett* seems to have been concerned with conditions that might enmesh the court in the tax investigation if the taxpayer complained that a condition was not being honored. 837 F.2d at 1349. That problem is unlikely to arise if all the court is doing is directing the taxpayer to appear at one location rather than another.

Turning to the district judge's last ground, we point out that the investigation was not limited to determining the corporation's tax liabilities, contrary to the judge's suggestion. As the first passage that we quoted from Agent Hill's affidavit makes clear, another—and entirely lawful—object of the investigation was to determine whether the Michauds should be recommended to the Justice Department for prosecution, presumably for filing false returns on behalf of the corporation. (The statute bars the use of the summons procedure for criminal investigation only after the decision to prosecute has been made. 26 U.S.C. § 7602(b).) To this arm of the investigation the fingerprints and handwriting exemplars were directly pertinent.

There was no basis for quashing the summons on the record before the district judge, but at argument the Michauds' lawyer advised us without contradiction from the government's lawyer that another officer of their corporation has been prose-

cuted for criminal violations of the federal tax laws and has pleaded guilty. We therefore asked the government to advise us whether the government had yet recommended that the Michauds be prosecuted. By letter dated December 7, 1989, the government responded "that no recommendation for prosecution of the Michauds has been made, and that the special agent who issued the summons still requires the handwriting exemplars and fingerprints for his investigation."

The judgment quashing the summonses is reversed and the case remanded with directions to enforce them. The award of attorneys' fees to the Michauds is also reversed. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED, WITH DIRECTIONS.