**UNITED STATES of America and Peter P. Calarco, Special Agent, Internal Revenue Service, Petitioners-Appellees,**

v.

**Daniel MILLMAN, Esq., Respondent-Appellant.**

**No. 939, Docket 86-6284.**

United States Court of Appeals, Second Circuit.

Argued March 19, 1987.

Decided June 29, 1987.

Lawrence S. Feld, New York City (Kostelanetz & Ritholz, New York City, Leonard R. Rosenblatt, Rosenblatt & Maas, of counsel), for respondent-appellant.

James H. Love, U.S. Dept. of Justice, Tax Div., Washington, D.C. (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, Dept. of Justice, Tax Div., Washington, D.C., of counsel), for petitioners-appellees.

Before KEARSE, PRATT, and MAHONEY, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

For the second time this case is before us on the government's petition to enforce an Internal Revenue Service (IRS) summons directed against respondent Daniel Millman. On the earlier appeal, *United States v. Millman*, 765 F.2d 27 (2d Cir.1985) (*"Millman I"*), we reversed the district court's order granting the government's petition and remanded for an evidentiary hearing to determine whether the IRS summons was issued for an improper purpose. *Id.* at 30.

After the required hearing, the district court again ordered enforcement of the summons. Millman appeals again, contending this time that the district court improperly applied the "institutional posture" test. We agree with the district court that Millman was required to show that the "institutional posture" of the IRS reflected the bad faith necessary to deny enforcement of the summons, and that he failed to do so. We therefore affirm.

## BACKGROUND

Our opinion in *Millman I* generally describes the dispute. We set forth here only those facts necessary to understand the issues on this appeal.

In 1968 Daniel Millman, a New York tax attorney, invested, along with several of his clients, in certain oil and gas properties. Millman retained Boyd R. Brown, a geologist and engineer, to appraise these properties so that he and his clients could donate them to charity and claim their fair market values as deductions on their federal income tax returns.

On audits of the returns of several of Millman's clients the IRS challenged Brown's valuations and applied a different method of appraisal employed by IRS engineering agent Frank Caponegro, a method which produced values substantially lower than Brown's. The taxpayers and the IRS eventually settled those cases at 41 percent of Brown's appraised value, a figure that was still three times the value determined by Caponegro.

As a result of those proceedings, Caponegro became convinced that Millman was responsible for conduct that amounted to tax fraud. Indeed, he characterized Millman as a "peddler" of tax evasion, and the government concedes that substantial animosity existed between Caponegro and Millman, animosity that prompted Caponegro to collect his own file on the activities of Millman. Eventually, Caponegro prepared and circulated three memoranda detailing his beliefs that Millman had been responsible for gross overvaluations of the properties, and that fraud was involved.

When the IRS computer in 1981 selected Millman's 1979 federal income tax return for audit, the audit was assigned to Caponegro, who worked with revenue agent Stanley Tepper on the case. As a result of their investigation, Tepper issued a fraud referral report in August 1982, and approximately one month later, special agent Peter Calarco of the IRS's criminal investigation division ("CID") was assigned to pursue the Millman case.

On July 25, 1983, Millman was served by special agent Calarco with the summons at issue here. Millman has not complied with the summons, claiming that it was issued by the IRS for an improper purpose, namely, to harass and punish him because of his vigorous advocacy on behalf of clients who had invested in these properties. Millman contends that Caponegro's personal hostility toward him so influenced the conduct of the IRS investigation of this case that it, in effect, became the IRS's institutional posture.

The district court first denied Millman's request for a hearing on these charges, but we reversed and remanded for an evidentiary hearing on the question of whether the IRS summons was issued for an improper purpose. *See Millman I.* The hearing was then conducted by magistrate A. Simon Chrein, whose findings were adopted by the district court on December 10, 1986. 650 F.Supp. 508 (E.D.N.Y.1986). This appeal followed.

## DISCUSSION

In the context of "draw[ing] the line between permissible civil and impermissible criminal purposes" that might underlie an IRS summons, the Supreme Court in *United States v. LaSalle National Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978), formulated the "institutional posture" test:

> [W]e cannot draw [the line between civil and criminal purposes] on the basis of the agent's personal intent. To do so would unnecessarily frustrate the enforcement of the tax laws. * * * [T]he question whether an investigation has solely criminal purposes must be answered only by an examination of the institutional posture of the IRS.

In the present appeal we must determine whether the institutional posture test also applies in the somewhat different context of deciding if a summons was issued merely to harass the taxpayer involved. We conclude that the "institutional posture" test is the appropriate standard for such a case, but that the motivation of the individual IRS agent involved may be relevant to the determination of the IRS's posture.

Applying that standard to the facts found by the magistrate and adopted by the district court, we affirm the judgment of the court below enforcing the IRS summons.

## A. The "Institutional Posture" Test.

 The Supreme Court has dealt with the question of the enforceability of IRS summonses mainly in the context of distinguishing between a criminal and a civil investigation. At one time, the Internal Revenue Code allowed IRS summonses to be enforced only when the purpose of the investigation was to determine potential civil tax liability; courts then uniformly held that 26 U.S.C. § 7602 did not authorize the issuance of an IRS summons "for the improper purpose of obtaining evidence for use in a criminal prosecution", *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964); *see also La-Salle National Bank*, 437 U.S. at 316, 98 S.Ct. at 2367; *Donaldson v. United States*, 400 U.S. 517, 532–33, 91 S.Ct. 534, 543–44, 27 L.Ed.2d 580 (1971). In 1982, however, congress amended § 7602 to permit the issuance of a summons for "the purpose of inquiring into any *offense* connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(b) (emphasis added). Thus, the precise question addressed in *Reisman, Donaldson*, and *LaSalle National Bank* is no longer a live one. Very much alive, and central to this case, however, is the broader question of what standard to apply in deciding whether an IRS summons has been issued for some other improper purpose.

In *LaSalle National Bank*, the Supreme Court dealt with a claim that the motive of a single IRS agent, to pursue a criminal investigation of the taxpayer, was so important in the issuance of the summons that, in effect, it became the purpose of the IRS itself, thus rendering (at that time) the summons unenforceable under *Reisman* and the then-in-force § 7602. *LaSalle National Bank*, 437 U.S. at 303, 98 S.Ct. at 2360. The Supreme Court there decided that the line between enforceable and unenforceable summonses should not be "draw[n] * * * on the basis of the agent's personal intent." *Id.* at 316, 98 S.Ct. at

2367. The Court went on to note, "the inquiry into the criminal enforcement objectives of the agent would delay summons enforcement proceedings while parties clash over, and judges grapple with, the thought processes of each investigator." *Id.*

From the broad language of *LaSalle National Bank*, the government urges that to obtain enforcement it need only show there existed a single valid purpose underlying the summons. Indeed, since *LaSalle National Bank* clearly places on the taxpayer the burden of *disproving* a legitimate purpose for the summons, 437 U.S. at 316, 98 S.Ct. at 2367, the IRS would have us go still further, and hold that so long as Millman cannot affirmatively show the absence of even a single legitimate tax collection purpose, its summons must be enforced.

We do not read *LaSalle National Bank* or the institutional posture test so broadly. The Supreme Court did place upon taxpayers who challenge a summons the onerous burden of proving the absence of a valid IRS motive, but its language in so doing is instructive:

> [T]hose opposing enforcement * * * do bear the burden to disprove the *actual* existence of a valid * * * purpose by the Service. *After all, the purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602* by issuing the summons.

*Id.* (emphasis added).

By using the terms "actual existence", "good-faith inquiry", and "honestly pursuing", the Supreme Court indicated that the IRS must do more than mechanically recite, in case after case, that it believes the taxpayer may owe taxes to the treasury. Such a standard would be meaningless, particularly since the taxpayer would have the virtually impossible burden of disproving that there was such a purpose. In the final analysis, while Millman must show the absence of a valid purpose underlying the summons, and must do so by reference to the IRS's institutional posture, his burden can be met by showing bad faith on the

part of the IRS, even if the IRS can point to a purported tax-collection purpose.

Although *LaSalle National Bank* can be read to render the motive of the individual agent irrelevant in the civil-criminal context presented there, that motive is not meaningless in the inquiry into potential IRS harassment involved here. As the Supreme Court noted in *LaSalle National Bank*, "We recognize, of course, that examination of agent motive may be necessary to evaluate the good-faith factors of [*United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)], for example, to consider whether a summons was issued to harass the taxpayer." *LaSalle National Bank*, 437 U.S. at 316 n. 17, 98 S.Ct. at 2367 n. 17.

Thus, we conclude that the "institutional posture" test is the appropriate standard for determining whether a summons is issued merely to harass the taxpayer, that the motive of an agent involved in an investigation is a relevant factor in determining that institutional posture, as are the particular facts of each investigation and each taxpayer's situation, and that while the institutional posture test is applicable to a claim such as Millman's, how that posture, and the good faith of the IRS, are determined is a matter for case-by-case adjudication.

B. *Application of the Institutional Posture Test to this Case.*

The findings of Magistrate Chrein, adopted by the district court, recommended enforcement of the IRS's summons on two grounds. First, he found that "Caponegro's distaste of Mr. Millman * * * was a product of [his] sincerely held belief that Mr. Millman was a dishonest taxpayer." Second, he concluded that, in any event, "the institutional posture of [the] IRS was not infected by any alleged hostility on the part of Mr. Caponegro". We conclude that the magistrate properly applied the institutional posture test, and that his findings of fact are not clearly erroneous; we therefore affirm the district court's order enforcing the summons.

First, it is obvious that Caponegro's admitted hostility toward Millman resulted from his belief that Millman counseled his clients in the illegal avoidance of taxes. It is hardly improper for an IRS agent to direct his attention to those cases he feels raise a strong possibility of illegality; indeed, that would seem to be an important part of his job.

Moreover, there was here valid cause for Caponegro's suspicions. His work on cases involving Millman's clients, who sought to take deductions for the value of the very same property Millman deducted on the tax return under investigation, resulted in settlements wherein the property was valued at substantially less than the amounts claimed by the taxpayers. When Millman's return was chosen for audit by the IRS computer, it was therefore appropriate for Caponegro to be suspicious and prompt further IRS action in the case.

Second, even if we were to assume that Caponegro's motive was improper, it is clear that his influence on the investigation, while important, has not been so pervasive as to have become the institutional posture of the IRS. To begin with, there was substantial oversight within the IRS that ensured that any possible improper intent of engineer agent Caponegro could not, of itself, have resulted in the issuance of the summons. *See LaSalle National Bank*, 437 U.S. at 314–15, 98 S.Ct. at 2366–67 (pointing to the IRS "review process" as "multilayered and thorough"). The audit itself, for example, was precipitated not by Caponegro but by the computer's selection of Millman's individual tax return for 1979. The fraud referral report that caused this investigation to be undertaken by the CID came not from Caponegro, but instead from revenue agent Tepper. While Tepper had received memoranda from Caponegro regarding the Millman case, Tepper conducted his own investigation of the matter, and Caponegro did not even know about Tepper's referral report until after Tepper had filed it.

In addition, once the fraud report had been issued to the CID, it was evaluated by group manager George Tierney and by spe-

cial agent Calarco. It was Calarco who determined that the referral had potential for investigation and should be followed up. He testified that "his evaluation was based primarily upon the facts contained in the referral and gave little weight to the conclusions of Mr. Caponegro contained in the attached memoranda." Finally, it was Calarco, not Caponegro, who made the decision to issue the summons challenged here.

Even this brief outline of the procedures followed by the IRS in this case demonstrates that the decisions made to launch the investigation, to continue it, and to issue the summons, were not made by Caponegro. While his input might have influenced some of these events, it was not the deciding factor in any of them.

More broadly, we reject Millman's contention that the IRS must be denied enforcement of its summons if he can show that the summons would not have been issued but for the actions of engineer agent Caponegro. True, had it not been for Caponegro the summons would never have been issued; but the same could be said for Tepper, Calarco, Tierney, and perhaps the IRS computer as well. Any one of these actors could have determined that the investigation should not proceed past the point at which he (or it) evaluated it; such is the nature of any system that, quite properly, evaluates an investigation at several levels. Simply because Caponegro for personal reasons did not, at his level, stop the instant inquiry does not mean that his reasons for failing to stop it became the reasons the IRS, sometime later, and after several other evaluations, issued the summons.

Adopting Millman's argument would, in effect, abandon the "institutional posture" test, and substitute for it the "individual agent's intent" standard rejected by the Supreme Court in *LaSalle National Bank*, since the action of any involved agent, who could halt an investigation but for his own improper reasons does not, could be considered a "but for" cause of the issuance of a summons at some later date.

The conceded hostility between Caponegro and Millman was surely sufficient rea-son for further inquiry into the circumstances surrounding the issuance of the summons; thus the need for an evidentiary hearing in this case. Now that that hearing has been held, we are satisfied that the institutional posture of the IRS was not infected by any improper motives of Caponegro.

■ We have considered the remaining arguments advanced by Millman, and find them to be without merit. We note, however, that while we reject Millman's contention that the documents sought by the IRS are protected by the attorney-client privilege, we do so on the basis that Millman has not sustained his burden of showing that the communications in question were related to his status as an attorney rather than as a business adviser or accountant. *See, e.g., United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). We therefore have not considered the *per se* rule suggested by the district court that "[w]hen an attorney goes into business with his clients, there is no attorney/client privilege, period."

The judgment of the district court enforcing the IRS's summons is affirmed.