Jay ANGOFF, Director Missouri
Department of Insurance,
Respondent,

v.

M & M MANAGEMENT
CORPORATION, et
al., Appellants.

No. WD 49555.

Missouri Court of Appeals,
Western District.

May 9, 1995.

James R. Wyrsch, Stephen G. Mirakian, Cheryl A. Pilate, Wyrsch Atwell Mirakian Lee & Hobbs, Kansas City, for appellants.

Dori J. Drummond, Joseph R. McMahon, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

M & M Management Corp., Magnolia Acceptance Corp., Consolidated Claims Services, Inc., and Consolidated Finance (the Appellants) contest the enforcement of a subpoena duces tecum issued by Jay Angoff, Director of the Missouri Department of Insurance (the Department). The Appellants raise two points on appeal, arguing that the trial court erred in ordering enforcement of the subpoena duces tecum (1) because the Department lacked the statutory authority or the jurisdiction to issue the subpoena; and (2) because the Department acted with bad faith and an improper purpose in using the subpoena as an information-gathering tool. The judgment is affirmed.

The pertinent facts of this case show that, on February 4, 1994, the Department issued a subpoena duces tecum, ordering the Appellants to produce records for each corporate entity located at 1627 Main Street, Kansas City, Missouri, and to appear before the Department "to answer questions concerning any transaction of the business of insur-

ance...."[1] The requested records included: information involving the name and status of each entity; a description of the business conducted by those entities; the names, addresses and job descriptions of employees; the names and addresses of contact persons for each insurance company with which the entities did business; copies of written contracts and agreements concerning the entities and insurance companies with which they did business, or, if no contracts or agreements existed, a statement from the owner and manager of each entity describing the services performed or activities conducted for each insurance company; bank account statements from October 1993 to the date of the subpoena for accounts wherein insurance premiums of residents or non-residents of Missouri had been deposited; and bank statements from October 1993 to the date of the subpoena for bank accounts in which settlement proceeds from claims of residents or non-residents of Missouri were received, deposited or distributed by the entities.

On February 28, 1994, counsel for the Appellants sent a letter to the Department's counsel, stating that the Appellants "will not voluntarily comply with the subpoena." Consequently, on March 1, 1994, the Department filed an application for an order to show cause why a subpoena duces tecum should not be enforced and, on that same day, Judge Lee E. Wells issued the requested order to show cause. The Appellants filed a response to the Department's application and a motion to quash the subpoena, claiming that the Department failed to plead facts which would give rise to jurisdiction under § 374.190, RSMo 1994.[2] The Appellants further asserted that they had not violated Missouri insurance laws, that they were not involved in the business of insurance transacted in the State of Missouri, that they were not insurance

1. The subpoena was also issued against three individuals, Cheryll S. Coon, Ferrell Travis Riley, Sr., and Frank J. Riley, as well as ten other corporate entities, including M & M Management Accounting Corporation, Palisades National Insurance Company, Ltd., Commercial Acceptance Insurance Company, Premiere Assurance & Casualty Company, Old American Insurance Company, Ltd., Trelawney Insurance Company, Ltd., Meadowlark Insurance Company, Commercial Indemnity Assurance Company, Western

Businessmen's Association and La Fenix Boliviana, S.A. These persons and entities are not parties to the current appeal. It is noted, however, that M & M Management Accounting Corporation is simply the business trade name for one of the Appellants, M & M Management Corporation.

2. Unless otherwise indicated, all statutory references are to Revised Statutes of Missouri 1994.

companies, agents or brokers within the meaning of § 374.190, and that, accordingly, the Division had no authority to issue an investigatory subpoena under § 374.190.

In an effort to settle the matter, attorneys for the Appellants provided the Department with an informal written response to the subpoena duces tecum. The Department found the response unsatisfactory and, on May 13, 1994, the court held an evidentiary hearing to show cause why the subpoena duces tecum should not be enforced.

During the hearing, the court admitted into evidence ten exhibits offered by the Department. The exhibits included the subpoena duces tecum, the informal response to the Department by the Appellants, letters written by counsel for the Appellants, documentation certifying the Appellants as foreign corporations, and a petition by M & M Management in a separate action. Many of the exhibits demonstrated that at least some of the entities named in the subpoena performed services or provided financing for insurance companies. The entities denied, however, that the services or financing involved insurance companies soliciting or issuing insurance policies to Missouri residents, property or risks. After considering such evidence, the court ordered the Appellants to obey the subpoena.

On May 27, 1994, the Appellants filed a motion for reconsideration and stay. That motion was denied, and the Appellants were ordered to comply with the earlier order. Fearing that compliance with that order might render an appeal moot, the Appellants filed a motion requesting a stay pending appeal. The motion was orally denied, and the Appellants then filed their notice of appeal and a motion for stay pending appeal with this court. A panel of this court also entered an order denying the Appellants' motion and, on June 14, 1994, the Appellants produced the requested documents. The Appellants now appeal the order enforcing the subpoena duces tecum and seek the return of their documents.

■ In their first point on appeal, the Appellants contend that the trial court erred in ordering enforcement of the subpoena duces tecum, since the Department lacked the statutory authority or the jurisdiction to make such an issuance. They claim that the Department made no showing that the Appellants are violating Missouri insurance laws or are engaging in the business of insurance.

■ "It is generally accepted that the courts will enforce a subpoena during an administrative investigation if: 1) the inquiry is within the authority of the agency; 2) the demand is not too indefinite; 3) the information sought is reasonably relevant." *Matter of Hein*, 584 S.W.2d 631, 632 (Mo.App.1979). Turning to the first prong of this test, it is noted that administrative agencies exercise only the power conferred upon them by statute, and agencies possess no inherent authority to issue a subpoena. *Brooks v. Pool–Leffler*, 636 S.W.2d 113, 119 (Mo.App.1982).

The Department claims it was granted the authority to issue a subpoena duces tecum by means of § 374.190. Section 374.190 reads, in pertinent part, as follows:

1. The director shall examine and inquire into all violations of the insurance laws of the state, and inquire into and investigate the business of insurance transacted in this state by any insurance agent, broker, agency or insurance company.

2. He or any of his duly appointed agents may compel the attendance before him, and may examine, under oath, the directors, officers, agents, employees, solicitors, attorneys or any other person, in reference to the condition, affairs, management of the business, or any matters relating thereto. *He* may administer oaths or affirmations, and *shall have power to summon and compel the attendance of witnesses, and to require and compel the production of records, books, papers, contracts or other documents, if necessary.*

3. The director may make and conduct the investigation in person, or he may appoint one or more persons to make and conduct the same for him.

(Emphasis added).

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consid-

er the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). To determine whether a statute is clear and unambiguous, courts look to whether the language is plain and clear to a person of ordinary intelligence. *Id.* The ordinary sense of a word is generally ascertainable by means of a dictionary definition. *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 340 (Mo. banc 1991). Only when language is ambiguous, or when it leads to an illogical result, may courts look past the plain and ordinary meaning of a statute. *State ex rel. Md. Heights, etc. v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987).

Although the language of § 374.190 certainly grants the Department the authority to "summon and compel" witnesses, as well as to "require and compel" the production of documents during an investigation, it must be determined whether a subpoena is the proper method by which to achieve such a result. It could be argued that the words "summon," "compel" and "require" do not convey subpoena power, since the language of the statute does not include the word "subpoena."

■ Subpoena authority may be granted either expressly or impliedly by statute. *Brooks,* 636 S.W.2d at 119. "Implication of the subpoena power is not proper ... simply because that power would facilitate the accomplishment of an end the court deems beneficial. The subpoena power may be implied only if it necessarily follows from the language of the statute." *Id.* (citation omitted). This court must consider, therefore, whether the statutory language of § 374.190 creates such an implication.

A subpoena is "a command to appear at a certain time and place to give testimony upon a certain matter." Black's Dictionary 1426 (6th Ed.1990). The word "summon," which is found in § 374.190, means to "command or request the presence or service of." Webster's Third New International Dictionary 2290 (1981). Because the definitions of both words contemplate a command for one to appear, a plausible interpretation is that the terms are functionally identical. In addition to a command, however, the word "summon"

can also refer to a request. Obviously, there is a great difference between "commanding" one to appear and simply "requesting" one's presence. Such a discrepancy renders the meaning of the statute unclear.

Turning to the next relevant word of the statute, "compel," we find that it means "[t]o urge forcefully; under extreme pressure." Black's Dictionary 282 (6th Ed.1990). Again, because one could urge forcefully without invoking the use of a subpoena, the meaning of this term is also obscure, suggesting that further analysis is necessary to determine the intent of the legislature.

And finally, the word "require" means "[t]o ask for authoritatively or imperatively," or to "direct, order, demand, instruct, command, claim, compel, request, need, exact." *Id.* at 1304. The disparate meanings found in this definition likewise confirm that reasonable persons could differ as to the significance of the term "require."

■ When construing an ambiguous statute, it is appropriate to consider the statute's history, surrounding circumstances and the objective to be accomplished thereby. *See Glanville v. Hickory County Reorg. Sch., etc.,* 637 S.W.2d 328, 330 (Mo.App.1982). The objective of § 374.190 appears to be the effective investigation of insurance violations and insurance business transacted in Missouri. *See* § 374.190.1. In order to accomplish this goal, the legislature obviously believed it was necessary for the Department to have the power to "summon and compel the attendance of witnesses, and to require and compel the production of records, books, papers, contracts or other documents, if necessary." § 374.190.2. The reasonable legal mechanism by which to accomplish such investigations is a subpoena, since the subpoena commands a person to appear before the Department. The Department's ability to subpoena individuals would, in turn, allow it to carry out the second statutory prerogative: to "require and compel the production of records, books, papers, contracts or other documents" by means of a subpoena duces tecum. *See* § 374.190.2. "When testimonial compulsion in general is predicated by a statute, process for documents will be im-

plied as well." *State ex rel. Rowland Group v. Koehr,* 831 S.W.2d 930, 932 (Mo. banc 1992).

■ The language of § 374.190 clearly describes the subpoena process in an administrative investigation. To conclude that the statute does not confer subpoena power would be to draw an artificial distinction where no difference in fact exists, and such a result would be illogical. The legislature is presumed to have intended a logical result, rather than an absurd or unreasonable one. *Blaine v. J.E. Jones Const. Co.,* 841 S.W.2d 703, 711 (Mo.App.1992).

■ Furthermore, to shed light on a statute's proper interpretation, courts consider other statutes involving a similar or related subject matter. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991). "All consistent statutes relating to the same subject are in pari materia and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *Id.* Section 374.210 is one such statute, since it is interrelated to § 374.190. It serves as punishment for those who refuse to cooperate with the Department's investigation, and § 374.210.2 reads as follows:

Any person who shall refuse to give [the] director full and truthful information, and answer in writing to any inquiry or question made in writing by the director, in regard to the business of insurance carried on by such person, or to appear and testify under oath before the director in regard to the same, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine not exceeding five hundred dollars, or imprisonment not exceeding three months.

This sort of stringent punishment also indicates that the legislature intended to grant the Department significant power in accomplishing its investigations—power which is implemented through subpoena authority. Hence, reading that statute in pari materia with § 374.190, this court holds that under § 374.190, the Department is authorized to employ subpoenas in order to carry out the legislative goal of summoning and compelling the attendance of witnesses and requiring and compelling the production of records, books, papers, contracts or other necessary documents.

In coming to this conclusion, however, it is necessary to address another recent case of the Western District, *State of Missouri ex rel. City of Raytown v. Missouri Commission on Human Rights,* No. 49805, slip op. at 5, 1995 WL 103807 (Mo.App. March 14, 1995). In *Raytown,* the Commission on Human Rights (the Commission) argued that its enabling statute, § 213.030 granted it the power to subpoena books, papers or other materials during an investigation. Section 213.030 specifically states that the Commission shall have the powers:

(7) To receive, investigate, initiate, and pass upon complaints alleging discrimination in employment, housing or in places of public accommodations because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, handicap, or familial status as it relates to housing *and to require the production for examination of any books, papers, records, or other materials relating to any matter under investigation.*

(8) To hold hearings, *subpoena witnesses,* compel their attendance, administer oaths, to take the testimony of any person under oath, *and, in connection therewith, to require the production for examination of any books, papers or other materials relating to any matter under investigation or in question before the commission.*

Section 213.030 (emphasis added). Subsection (7) of the above statute pertains to the agency's powers during investigations, while subsection (8) pertains to those powers during hearings. Though both subsections permit the Commission to require the production of documents, this court found that the lack of the word "subpoena" in subsection (7), followed by the express use of the word "subpoena" in subsection (8), indicated that the legislature intended to deny the Commission subpoena power at the investigatory stage. *Raytown,* slip op. at 5–6. "The legislature could have, but did not state that the commission would have the subpoena power in connection with its investigations." *Id.* at

6. Hence, although the Commission had the authority to "require" the production of books and documents during an investigation, the method by which it was to achieve such production was not a subpoena.

■ The instant case is distinguishable from *Raytown*, since *Raytown* involved a statute which prominently juxtaposed the use of the word "subpoena" in one subparagraph with the word's omission in the preceding subparagraph. Section 374.190 makes no such distinction. The word "subpoena" is not expressly used in any portion of the statute. The maxim "expressio unius est exclusio" (meaning that omissions should be understood as exclusions) is to be applied with great caution. *Pippins v. City of St. Louis*, 823 S.W.2d 131, 133 (Mo.App.1992). In certain instances, however, it may be an appropriate auxiliary rule of construction. *State ex rel. Fawkes v. Bland*, 357 Mo. 634, 210 S.W.2d 31, 33–34 (1948). The *Raytown* case was one such instance, since the language of the relevant statute provided a compelling indication of the legislative intent to distinguish between the use of subpoena power and the lack of such authority. The current case is not so compelling.[3] This court therefore determines that the omission of the word "subpoena" in § 374.190 does not indicate a legislative intent to exclude such power under the statute, in light of the use of the words "summon", "compel" and "require" in its stead. Accordingly, the Department is authorized to issue subpoenas pursuant to § 374.190.

■ The Appellants argue, however, that a prerequisite to the Department's authority or jurisdiction to issue a subpoena to investigate their activities is proof by the Department that the Appellants' activities fall within the scope of the insurance statutes. The Appellants couch their argument in terms of the first prong of the *Hein* test, a prong which examines whether an inquiry is within the authority of the investigating agency.

*Hein*, 584 S.W.2d at 632. The Appellants claim that the Department's authority to issue a subpoena is dependent upon proof of the Department's authority over an insurance entity. In making such an argument, the Appellants confuse the first and third prongs of the *Hein* test. The term "authority" in the first prong refers to whether the agency has been granted the power to issue an investigatory subpoena by the legislature. *See Division of Employment Sec. v. Ferger*, 781 S.W.2d 568, 570 (Mo.App.1989). As previously discussed, the Department is authorized to issue investigatory subpoenas under § 374.190. It is under the second and third prongs that the Department must establish a right to issue a subpoena for the specific information requested.

■ The second prong requires that the information requested not be indefinite, while the third prong requires that the information be reasonably relevant to the ability of the agency to carry out its legislative purpose. *Hein*, 584 S.W.2d at 632–33. The Appellants do not challenge the definiteness of the information requested by the subpoena, since they have already complied with the subpoena. They do argue, however, that the Department has no entitlement to specifically request information from them. A restatement of their argument in the context of the third prong is that the information requested is not relevant to Department's administration of the insurance laws because there is insufficient evidence by the Department that the Appellants' activities fall within the purview of the insurance statutes.

The Appellants' interpretation of § 374.190.2 would require the Department to show that an entity is involved in violations of insurance law, is transacting insurance business in the state of Missouri, or is an insurance agent, broker, agency or insurance company prior to being entitled to subpoena information as part of an investigation of the entity. Such requirement would render

---

**3.** This court is mindful that a neighboring statute to § 374.190, § 374.205, specifically grants the Department "subpoena" power during financial examinations. Reading this statute in pari materia with § 374.190, it is still determined that the legislature intended to authorize subpoena power under § 374.190. The existence of another statute bearing such language is not so compelling as to outweigh the "great caution" courts are to use before determining that the omission of a word indicates its exclusion. *See Pippins*, 823 S.W.2d at 133.

§ 374.190.2 meaningless; it would be impossible for the Department to prove that an entity was within the scope of Missouri insurance law as a prerequisite to utilizing a subpoena in the course of its investigation into whether the entity is within the scope of Missouri insurance law.

The Appellants are correct, however, that an agency must meet some burden of proof as to relevancy to be entitled to have an investigatory subpoena enforced. Case law establishes that the level of proof required of an agency is much lower than that urged by the Appellants. The case of *Ferger* provides guidance as to the standard for relevancy under the third prong of the *Hein* test. *See Ferger*, 781 S.W.2d at 570.

In *Ferger*, the Division of Employment Security desired information from Ferger Design, Inc. to determine whether persons working for Ferger Design were employees or independent contractors. *Id.* at 569. The Department served the president of Ferger Design with a subpoena requesting "all the payroll and cash disbursement records and all books, papers and memoranda showing wages paid or payable...." *Id.* In analyzing whether such subpoena could be enforced under *Hein*, the court held that the information requested by the subpoena was reasonably relevant because there was reason to believe that the activities at Ferger Design might be within the meaning of the statutes the agency administers. *Id.* at 570.

In this case, the Department received information suggesting that the Appellants, while physically located in the state of Missouri, were performing various services for insurance companies. Applying the relevancy standard of *Ferger*, this information gave the Department reason to believe that the Appellants' activities might be within the scope of the insurance statutes administered by the Department. Pursuant to § 374.190.2, the Department was entitled to subpoena such records as reasonably necessary to determine if the Appellants' activities

fall within the purview of the insurance laws.[4] The Appellants' point one is denied.

■■■■ In their second point, the Appellants assert that the trial court erred in enforcing the subpoena because the Department acted in bad faith and with an improper purpose by using the subpoena to aid federal law enforcement. The Appellants claim that the Department's sole or primary purpose in issuing the subpoena was to gather information to aid the Federal Bureau of Investigation (FBI) in a criminal investigation.

Francis Martin Smith, II, testified at the hearing on the order to show cause that, in his capacity as a special investigator for the Department and prior to the time the subpoena was issued, he was assigned to investigate the Appellants' activities after various citizen complaints were received by the Department. In the course of such investigation, Mr. Smith referred the complaints to the FBI, and he was assisted by the FBI in obtaining the names and addresses of the Appellants' principals. Katherine Turner, the Supervisor of the Department's Special Investigation Section, also testified that the Department had shared information with the FBI.

■■■■ The Appellants claim that the testimony of Mr. Smith and Ms. Turner proves that, since the Department had previously shared information about complaints with the FBI, the Department's sole and primary purpose in seeking discovery from the Appellants by way of subpoena is to provide the subpoenaed information to the FBI for purposes of a criminal investigation. They assert that the trial court's enforcement of the subpoena, despite their objections that the Department is acting with this improper purpose, is unsupported by the evidence and is an erroneous application of the law. Under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the judgment of the lower court in bench-tried cases will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or ap-

---

4. This court does not examine whether all the documents requested are reasonably necessary to the Department's investigation, since the Appellants' point on appeal is limited to a challenge of the Department's right to subpoena information from them in the first place, rather than a challenge to the actual documents requested.

plies the law. *Brooks,* 636 S.W.2d at 116. In determining whether the evidence is sufficient to support the judgment, the reviewing court accepts as true all evidence and permissible inferences drawn therefrom which are favorable to the prevailing party, and disregards all contrary evidence. *Lee v. Rolla Speedway, Inc.,* 668 S.W.2d 200, 205 (Mo. App.1984).

To make their argument, the Appellants rely on federal case law enunciated in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). In *LaSalle,* the Court examined the investigatory summons power of the IRS, explaining that, in order to be enforceable, a summons must be issued in good faith. *Id.* at 313, 98 S.Ct. at 2366, 57 L.Ed.2d at 234. According to the Court, the good faith requirement would not be met if abuse were to occur, such as when a summons is issued for an improper purpose. *Id.* at 314, 98 S.Ct. at 2366, 57 L.Ed.2d at 234 (quoting *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 119–20 (1964)). One improper purpose would be the issuance of an investigative summons by the IRS for the sole purpose of a criminal investigation.[5] *LaSalle,* 437 U.S. at 314, 98 S.Ct. at 2366, 57 L.Ed.2d at 234.

Even assuming this federal rule is good law and applies to Missouri state agencies, the Appellants fail to show the court's enforcement of the subpoena was unsupported by substantial evidence or constituted an erroneous application of the law. Under *LaSalle,* the Department could not have acted with an improper purpose as long as it lacked "solely criminal purposes," and the burden of proof is on the party opposing enforcement. *See id.* 437 U.S. at 316, 98 S.Ct. at 2367, 57 L.Ed.2d at 235. The Appellants have not met this burden.

First, viewing the evidence in the light most favorable to the judgment, there was substantial evidence that the Department possessed a valid civil reason for conducting the investigation, i.e., inquiry into potential violations of the state's civil insurance laws. The existence of this civil purpose precludes the possibility of a *solely* criminal motive. Second, there was no direct evidence of any intent to share any of the subpoenaed information with the FBI. The only evidence of such intent is an inference from the fact of the earlier sharing of other information.

Finally, the evidence does not establish that the Department possessed any criminal motive whatsoever, even in sharing the earlier complaints and information arising out of them with the FBI. Mr. Smith stated that he believed such information included very little data. Ms. Turner said only that information was shared with the FBI, without indicating the quantity or nature of the information. Again, viewing the evidence in the light most favorable to the judgment, this court concludes that the sharing was superficial, and does not support an inference that the Department's sole, or even primary, purpose in later issuing the subpoena was to assist the FBI in conducting a criminal investigation. The trial court's enforcement of the subpoena was not unsupported by substantial evidence, nor does it rest on an erroneous application of the law. Point denied.

The judgment is affirmed.

All concur.

---

**5.** The statute upon which *LaSalle* was based, 26 U.S.C. § 7602, was amended in 1982. The effect is that the IRS now appears to be able to issue summonses in the course of solely criminal investigations. *See U.S. v. Millman,* 822 F.2d 305, 308 (2d Cir.1987). *But see U.S. v. Michaud,* 907 F.2d 750, 752 n. 2 (7th Cir.1990) (listing conflicting interpretations of the amendment's effect).