**ITOBA LIMITED,**

v.

**LEP GROUP PLC, William R. Berkley, John L. Read, Peter J. Grant and John R. East.**

**Civ. No. 5–92–556 (WWE).**

United States District Court, D. Connecticut.

May 21, 1996.

---

**RULING ON PENDING MOTIONS**

EGINTON, Senior District Judge.

Plaintiff, Itoba Limited, brought this action against defendants LEP Group PLC ("LEP"), William R. Berkley, John L. Read, Peter J. Grant and John R. East, for alleged violations of sections 10(b) and 20 of the Securities Exchange Act of 1934 and Rule 10b–5. Plaintiff claims that defendants' alleged failure to disclose certain high risk investments in United States securities filings resulted in plaintiff's purchase of LEP stock at artificially inflated prices.

In August 1993, this court adopted Magistrate Judge Joan Margolis' recommended dismissal of the Complaint for lack of subject matter jurisdiction. Plaintiff appealed. The

United States Court of Appeals for the Second Circuit reversed and remanded the case for further proceedings, 54 F.3d 118 (2d Cir. 1995). Before the court is defendant Grant's motion to dismiss for lack of personal jurisdiction and insufficiency of service of process and defendants LEP, Berkley, Grant, Read and East's motions to dismiss based on *forum non conveniens* grounds. Also pending is defendants LEP, Berkley, Grant and East's motion for reconsideration of the court's January 5, 1996, margin endorsement granting plaintiff leave to file a supplemental affidavit in opposition to defendants' motions to dismiss for *forum non conveniens*.

## BACKGROUND

Familiarity with Magistrate Judge Margolis' recommended ruling and the opinion of the Second Circuit is presumed.

Itoba is a wholly-owned subsidiary of A.D.T. Limited ("ADT"), a transnational holding company based in Bermuda. LEP is a London-based holding company. Defendant Grant is a British citizen who from 1988 to 1990 served as Deputy Chairman and a Director of LEP. In 1990, defendant Read was Chairman and Chief Executive Officer of LEP, defendant East was Finance Director and defendant Berkley was a Director of LEP.

LEP's ordinary shares, the British equivalent of common stock, are registered in the United Kingdom and traded on the Stock Exchange of the United Kingdom and the Republic of Ireland Ltd. ("London Exchange"). Beginning in 1988, LEP's ordinary shares traded in the United States on the National Association of Securities Dealers Automated Quotations System ("NASDAQ") in the form of American Depository Shares. In 1989, 1990 and 1991, LEP filed Forms 6–K and 20–F with the Securities Exchange Commission ("SEC"). These filings included LEP's Annual Report and Accounts and various press releases regarding the company's performance.

ADT, through its United States subsidiary, A.D.T. Securities Systems, Inc., was one of the principal competitors with LEP's United States subsidiary, the National Guardian Corporation, in the United States residential and commercial alarm systems market. In 1990, ADT decided to acquire a substantial stake in LEP stock. From June 4, 1990 to November 23, 1990, ADT, through Itoba, invested on the London Exchange approximately $114 million in LEP stock, acquiring 27% of LEP's ordinary shares.

LEP's 1991 Annual Report revealed that in 1991 LEP wrote off over $522 million, including $299 million in extraordinary losses. Roughly two-thirds of LEP's extraordinary losses arose from its investments in United States activities: $160.8 million from its investment in United States real property and $46.1 million from its investment in a New York-based trade finance company called Trading Alliance Corporation ("TAC"). Thereafter, the trading price of LEP stock fell approximately 97 percent resulting in a loss to ADT of approximately $111 million.

Plaintiff initiated this lawsuit in September 1992, alleging that defendants fraudulently failed to disclose material information regarding the TAC and United States real property investments in LEP's 1989 and 1990 Forms 6–K and 20–F which caused the value of LEP's ordinary shares to be substantially less than the prices paid by plaintiff.

On January 12, 1993, defendant Grant, together with the other individual defendants and LEP, moved the court for a modified discovery schedule staying merits discovery but allowing discovery relating to subject matter jurisdiction [## 55 and 57] and, if warranted, the filing of motions to dismiss for lack of subject matter jurisdiction. Grant's motion states:

> The majority of LEP's board are United Kingdom citizens who have little, if any, contact with the United States. While these individual director defendants have a strong basis to challenge *in personam* jurisdiction, they should not be put to the task of doing so in light of the highly dubious subject matter jurisdiction of this court. Subject matter should be resolved first. Only if the court should determine that there is subject matter jurisdiction, will it be necessary to consider if there is personal jurisdiction over these defendants.

In an Order dated January 23, 1993 [# 58], Magistrate Judge Margolis ordered a stay of merits discovery pending limited discovery and resolution of any subsequently filed motions to dismiss relating to lack of subject matter jurisdiction. If those motions were filed and denied, the court would hold a conference to discuss discovery pertaining solely to matters of *in personam* jurisdiction.

On May 24, 1993, Grant moved, together with the other defendants, to dismiss for lack of subject matter jurisdiction and on the ground of *forum non conveniens.* In his motion, Grant stated:

> In accordance with the order of this court dated January 23, 1993, defendant [ ] Grant hereby reserves the right to bring additional preliminary motions directed to the pleadings, including objections based on personal jurisdiction, until after disposition of the instant motion.

The defendants' motions to dismiss on *forum non conveniens* grounds were not decided since the court dismissed the case for lack of subject matter jurisdiction.

On October 31, 1995, Magistrate Judge Margolis ordered defendant LEP to produce documents in response to Itoba's Document Requests [# 143]. Document production was held on December 18 and 19, 1995 in London, England at which LEP's counsel promised that copies of the documents would be forthcoming.

In January 1996, various banks in England holding outstanding debt pursuant to the Composite Guarantee & Mortgage Debenture dated August 12, 1991, appointed receivers to take control of LEP's property. On May 6, 1996, Magistrate Judge Margolis ordered LEP to provide Itoba with copies of the documents related to LEP's real estate limited partnerships on or before May 10, 1996 and copies of all other documents produced at the document production together with a privilege log, on or before May 31, 1996 [# 223]. LEP produced photocopies of the documents on May 9, 1996.

## DISCUSSION

### I. Personal Jurisdiction

Defendant Grant moves to dismiss for lack of personal jurisdiction arguing that he is a foreign citizen with no substantial connection to the events giving rise to the instant Complaint. Plaintiff responds arguing that the basis of personal jurisdiction arises out of Grant's June 1990 approval in England of LEP's Form 20–F, which Grant knew or should have known would be filed with the SEC and on which plaintiff relied in purchasing LEP stock.

■ To survive a pretrial motion to dismiss for lack of personal jurisdiction, plaintiff must make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials. All allegations are to be construed in the light most favorable to plaintiff and all doubts resolved in plaintiff's favor, notwithstanding controverting evidence by defendants. "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993).

■ Jurisdiction in this case is predicated on § 27 of the Securities Exchange Act of 1934 which allows the exercise of personal jurisdiction to the limits of the due process clause of the Fifth Amendment. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1339 (2d Cir.1972). Due process standards require that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Id.* at 1340 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). Also, there must be a causal relation between a defendant's jurisdictional contacts and a plaintiff's cause of action. *Huang v. Sentinel Government Securities,* 657 F.Supp. 485, 488 (S.D.N.Y.1987).

■ The court may exercise personal jurisdiction over a foreign defendant when the defendant conducts some act outside the forum state which causes an effect in the forum state. When this is the alleged basis for jurisdiction, the court must proceed with caution, particularly in the international context. "The defendant must know or have good

reason to know that his conduct will have effects in the state seeking to assert jurisdiction over him." *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d at 1340–1341.

▮ Plaintiff claims in this case that effects of Grant's actions abroad—his June 1990 approval of the Form 20–F filed by LEP—gave rise to plaintiff's federal securities claims based on the very same SEC filing. In support of its claim that defendant Grant approved Form 20–F, plaintiff submits a letter from Grant to P. Perceival, Secretary of LEP, dated June 19, 1990, in which Grant states "Thank you also for Form 20–F which I have received and on which I have no comment." Plaintiff also proffers a fax cover sheet from Perceival to Grant with a handwritten notation by Grant dated June 20, 1990, apparently to his secretary, which states "[p]lease check we did send a fax approving Form 20–F."

Defendant Grant asserts that he was not present at the meetings in which the documents were approved by the Board, but he has not refuted plaintiff's evidence that he approved Form 20–F in June 1990. Accordingly, the court must determine whether this undisputed evidence gives a reasonable basis to exercise jurisdiction over Grant.

In *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241 (S.D.N.Y.1984), the court held that personal jurisdiction existed over an Australian accounting firm that prepared an audit that it knew would be included in a United States securities filing for causes of action arising out of the audit. The court in *Reingold* found personal jurisdiction based on the findings that:

> [The defendant] knew or should have known on November 12, 1980, when it signed and issued the 1980[ ] audit, that the audit would be incorporated in an annual report and in a United States securities filing. The exercise of jurisdiction over [the defendant] on the basis of this act is reasonable. By issuing the 1980 audit, the Australian accountants subjected themselves to this Court's jurisdiction for causes of action arising out of that audit.

*Reingold,* 599 F.Supp. at 1259 (S.D.N.Y. 1984); *see also Landry v. Price Waterhouse Chartered Accountants,* 715 F.Supp. 98 (S.D.N.Y.1989) (personal jurisdiction found over foreign director of corporation who knew or should have known that financial statements he approved would affect price share on the NASDAQ).

Here, it is reasonable to conclude that Grant, as a Director of LEP whose securities traded on the NASDAQ, knew or should have known that the Form 20–F he approved would be filed with the SEC and be relied on by potential investors. As the Second Circuit noted, "SEC filings generally are the type of 'devices' that a reasonable investor would rely on in purchasing securities of the filing corporation." *Itoba v. Lep Group PLC,* 54 F.3d at 123. Also, the required causal nexus is met by plaintiff's allegation that it relied on this same Form 20–F to purchase LEP securities. Applying the reasoning of *Reingold,* the court finds that plaintiff has made a *prima facie* showing of personal jurisdiction.

## II. Service of Process

Defendant Grant argues that the court should dismiss the complaint against him due to plaintiff's insufficient service of process. He claims that plaintiff failed to serve him in accordance with the requirements of the Hague Convention. In response, plaintiff argues that pursuant to Fed.R.Civ.P. 12(h), defendant waived his right to claim insufficiency of service of process due to his failure to assert this defense in his prior motion to dismiss for lack of subject matter jurisdiction and on *forum non conveniens* grounds.

▮ Under Fed.R.Civ.P. 12(h), a defense of insufficiency of process is waived if omitted from a previous motion to dismiss or a responsive pleading, or not asserted in a reasonably timely fashion. *Federal Home Loan Mortg. Corp. v. Dutch Lane Associates,* 775 F.Supp. 133, 136–37 (S.D.N.Y.1991).

Defendant Grant claims that Magistrate Judge Margolis' January 23, 1993, Order limited the preliminary motions to those that challenged subject matter jurisdiction with the understanding that all of the defendant's "other preliminary motions" were preserved

until resolution of subject matter jurisdiction. Alternatively, Grant avers that the statement in his original motion to dismiss that he "hereby reserves the right to bring additional preliminary motions directed to the pleadings" retains the defense of insufficiency of service of process.

The court does not find either argument persuasive. Defendant's motion for limited discovery refers to the lack of subject matter jurisdiction and *contacts* between the individual defendants with the United States. There is no mention of insufficient service of process. The raising of a lack of personal jurisdiction does not incorporate a defense of insufficiency of service of process. The two defenses are separate and distinct. *Federal Home Loan Mortg. v. Dutch Lane Associates,* 775 F.Supp. 133, 137 (S.D.N.Y.1991).

Magistrate Judge Margolis' Order reflects the relief sought by defendant by granting limited discovery regarding subject matter jurisdiction and, if necessary, personal jurisdiction. It does not grant leave to file "other preliminary motions." Moreover, the statement in defendant Grants' original motion to dismiss is unavailing given that a defense of insufficiency of service is not "directed to the pleadings."

Defendant Grant has actively defended this case for over three years. His assertion of this defense at this point in the case is not reasonably timely and is therefore waived.

### III. Motion for Reconsideration

Before examining the merits of defendants' motions to dismiss on *forum non conveniens* grounds, the court must decide defendants LEP, Grant, Berkley and East's motion for reconsideration of the court's January 5, 1996, margin endorsement granting plaintiff's motion for leave to file a supplemental affidavit in opposition to defendants' motions to dismiss on *forum non conveniens* grounds. The court will grant defendants' motion for reconsideration.

The supplemental affidavit consists in part of the undated memorandum by Martin S. Ackerman, Esq. to the Board of Directors of LEP ("Ackerman Memorandum"). The fax notations at the bottom of each page indicate that this document was transmitted on December 9, 1991, but does not indicate to whom it was transmitted. It was supplied to plaintiff's attorneys at the document review on December 18 and 19, 1995.

Defendants argue that the Ackerman Memorandum was inadvertently produced to plaintiff's counsel and is otherwise protected under the attorney-client privilege and work product doctrine. Defendants seek its return, striking of the document from the record, sealing of the copy submitted to the court and a protective order prohibiting further use of it during this litigation.

In support of their argument that the Ackerman Memorandum is protected, defendants proffer the affidavit of defendant East which states that Ackerman was hired by Read "to oversee operations at TAC and protect LEP's investment in that entity." The affidavit also states that it was prepared by Ackerman at the request of East and Perceival as part of their investigation into Read's prior activities when litigation was anticipated between LEP and Read over the latter's demand for severance benefits.

Plaintiff argues that the document is not protected because it relates to communications by Ackerman as a business advisor, it does not render legal advice and it was not made in anticipation of litigation but at the request of defendant Read. Plaintiff submits a portion of an undated pleading from a lawsuit in England between defendant Read and LEP in which Read states that he retained Ackerman to manage TAC and requested that Ackerman write a comprehensive report regarding TAC. Plaintiff also proffers a memorandum dated November 21, 1991 from George V. Flagg to defendant Berkley which states that

> [Ackerman] is working under a letter of authority from John Read to deal with various TAC issues. He receives a $10,000 monthly retainer. He is the central focal point for funds which are provided by LEP at a $300,000 monthly rate to keep TAC solvent.
>
> Ackerman has been reviewing all of TAC's operations and has taken various actions to

reduce overheads and exposure and ultimately wind it down.

The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal advice." *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 159 (E.D.N.Y.1994) (quoting *Fisher v. U.S.*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). The party claiming the privilege bears the burden of demonstrating that there was: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential and (3) made for the purpose of obtaining or providing legal advice." *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996).

The privilege is invoked by a client requesting legal advice, as opposed to business advice. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1037 (2d Cir.1984). "To the extent that an internal corporate investigation is made by management itself, there is no attorney-client privilege ... and by the same token, no work product protection." *In re Grand Jury Subpoena Dated December 19, 1978,* 599 F.2d 504, 510 (2d Cir.1979).

To claim the protection of the work product doctrine, a party must demonstrate that "the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *U.S. v. Construction Products Research, Inc.*, 73 F.3d at 473; Fed.R.Civ.P. 26(b)(3).

Defendants have not sustained their burden of showing that the attorney-client privilege applies. First, defendants have failed to demonstrate that the Ackerman Memorandum relates to Ackerman's status as a legal advisor, not a business advisor. *See, e.g., U.S. v. Millman,* 822 F.2d 305, 310 (2d Cir.1987). None of the parties dispute that Ackerman was retained in 1991 to manage the affairs of TAC and protect LEP's interest in that company. Defendants present no facts or evidence from which this court can conclude that Ackerman was acting as a lawyer and not as a manager of TAC.

Second, despite Ackerman's designation of the Memorandum as "Attorney–Client Privilege[d] Information," the information contained in it is primarily business related. While the court is mindful that "[t]he mere fact that business advice is given or solicited does not [ ] automatically render the privilege lost ... [,]" the advice given must be predominately legal, as opposed to business, in nature. *U.S. v. Davis,* 132 F.R.D. 12, 16 (S.D.N.Y.1990) (quoting *Cuno Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y.1988)). That is not the case here.

Similarly, defendants have failed to demonstrate that the work product doctrine applies. Defendants' evidence, consisting only of defendant East's affidavit, states in conclusory fashion that litigation was anticipated. This is inadequate. Defendants have not provided any contemporaneous evidence or even the facts underlying East's belief that litigation was anticipated with Read. Also, plaintiff's interpretation and evidence that the Ackerman Memorandum was a comprehensive report regarding TAC, as requested by Read, while not conclusive, seems to be a reasonable characterization. *See In re Grand Jury Subpoena Dated December 19, 1978,* 599 F.2d at 511.

Thus, upon reconsideration, the defendants have failed to demonstrate that the Ackerman Memorandum is entitled to protective status and the January 5, 1996, decision of this court will stand.

## IV. Merits of the *Forum Non Conveniens* Motions

"To prevail on a motion to dismiss based on *forum non conveniens,* a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in [*Gulf Oil Corp. v.*] *Gilbert,* [330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) ] ... the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chemical Co. Inc.,* 942 F.2d 164, 167 (2d Cir.1991). Defendants bear the burden of demonstrating with adequate factual support why the court should disturb plaintiff's choice of forum. *G.B.C. Nigeria (Ltd.) v. M.V.*

*Sophia First,* 588 F.Supp. 76, 78 (S.D.N.Y. 1984).

■■■■■ An adequate alternative forum ordinarily exists when the defendant is amenable to process in the foreign forum unless the that forum does not permit litigation of the subject matter in dispute or in the "rare circumstances" where the remedy offered by the forum is clearly unsatisfactory. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). Whether the law in the foreign forum may be less procedurally or substantively favorable to plaintiff is not to be given conclusive or even substantial weight in the court's *forum non conveniens* determination. *Id.* at 247, 102 S.Ct. at 261. Other courts have found that England is an adequate forum for cases brought under the United States securities laws. *See Roby v. Corp. of Lloyd's,* 996 F.2d 1353 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993); *Bonny v. Society of Lloyd's,* 3 F.3d 156 (7th Cir.), *cert. denied,* 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994).

■■■■ None of the parties dispute that defendants are amenable to process in England. Defendants argue that England is an adequate alternative forum because plaintiff's federal securities fraud claims could be maintained as common law claims of deceit. In support, defendants submit the affidavit of Nicholas Underhill, Queen's Counsel ("QC"), which states essentially that the claims alleged in this suit could be advanced in England if properly pleaded.

In opposition, plaintiff claims that the remedy provided is so clearly inadequate because plaintiff's reliance on the Forms 6–K and 20–F would not support a common law claim of deceit. Plaintiff reasons that since plaintiff did not have direct contact with LEP when purchasing its stock, a British court would not find that the Forms 6–K and 20–F were intended to induce the plaintiff, as required to sustain a cause of action for deceit. Plaintiff submits the affidavit of Samuel Stamler, QC, and Ian Glick, QC, which states that "the issuing of a false report by a company which results in an investor buying shares and suffering loss does not give rise to a claim for deceit in England *unless* the investor pleads and proves that he was the intended victim of that false report, or one of the class of intended victims."

Based on the affidavits presented, the remedy in England is not "clearly inadequate." Plaintiff's claims can be brought as common law claims of deceit. The fact that plaintiff will have to plead and prove it was within the class of intended victims is not a complete bar to recovery.

The one issue remaining that the parties have not addressed, however, is whether the action would be barred by the English statute of limitations. Resolution of this issue is not necessary though since the private and public interest factors set forth in *Gilbert* do not support dismissal in favor of England.

■■■■ The private interests include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; practical problems involving the efficiency and expense of a trial; and enforceability of judgments. The public interests include administrative difficulties flowing from court congestion; imposing jury duty on citizens of the forum; the local interest in having controversies decided at home; and the avoidance of unnecessary problems in the application of foreign laws. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843.

As to the issue of ease of access to proof, defendants argue that all of the critical documents to the case are located in England. There are, however, key documents in the United States regarding LEP's United States investments in TAC and real estate. To the extent documents exist in England, advances in transportation and communication accord this issue less weight. *Allstate Life Insurance Co. v. Linter Group Ltd.,* 782 F.Supp. 215, 225 (S.D.N.Y.1992), *aff'd,* 994 F.2d 996 (2d Cir.1993).

Defendants Grant and Berkley argue that under English law, LEP's receivers are not required to comply with discovery orders given by this court, which will severely prejudice Grant and Berkley in their defense.

However, as the affidavit of English solicitor, Ian Terry, states, "the appointment of [ ][r]eceivers does not prohibit a discovery order being made against LEP and measures being taken against LEP for non-compliance with any such order." Also, defendants Berkley and Grant have access to LEP's document production to plaintiff.

Defendants argue that key witnesses who can testify regarding plaintiff's reliance and defendants' disclosure are beyond the subpoena power of this court. The witnesses defendants cite to include: ADT executives, David Hammond and Nicholas Wells, and former LEP executive, Geoffrey Tregaskes.

David Hammond and Nicholas Wells have expressed their willingness to testify in this court. As to Geoffrey Tregaskes, defendants have not demonstrated that his testimony is essential. Additionally, key witnesses are located in the United States relating to LEP's United States investments. Whether the case proceeds here or in England, compulsory process will be unavailable to attain the testimony of certain witnesses. *Shonac Corp. v. Marquesa Int'l Corp.*, 1988 WL 50601 (D.N.J.). Moreover, the non-resident party in either forum will have to incur the expense of making its witnesses available to testify.

With regard to the public interest factors, court congestion is not a factor since this court is ready to set the case down for trial when discovery is completed. As to imposing jury duty on the citizens of Connecticut, this court clearly has an interest in deciding this controversy given that approximately 50% of ADT stock is held by United States citizens. Finally, the court will not have to apply foreign law since plaintiff has withdrawn its claim, under English common law, for deceit. Accordingly, defendants have not met their burden of demonstrating that the balance of conveniences weigh in favor of England.

### CONCLUSION

For the foregoing reasons, defendant Grant's motion to dismiss for lack of personal jurisdiction and insufficient service of process [# 175] is DENIED and defendants LEP, East, Berkley, Grant and Read's motions to dismiss on *forum non conveniens* grounds [## 147, 149, 163 and 197] are DENIED.

Additionally, defendants LEP, Berkley, Grant and East's motion for reconsideration [# 198–1] is GRANTED. Upon reconsideration, the court's margin endorsement dated January 5, 1996, granting plaintiff permission to file a supplemental affidavit, is AFFIRMED. Defendants' motions to strike certain documents from the record, for a protective order and to seal certain files [# 198–2, 3, 4], are DENIED.